Justice Ginsburg
delivered the opinion of the Court.
California’s determinate sentencing law (DSL) assigns to the trial judge, not . to the jury, authority to find the facts that expose a defendant to an elevated “upper term” sentence. The facts so found are neither inherent in the jury’s verdict nor embraced by the defendant’s plea, and they need only be established by a preponderance of the evidence, not beyond a reasonable doubt. The question presented is whether the DSL, by placing sentence-elevating factfinding within the judge’s province, violates a defendant’s right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. We hold that it does.
As this Court’s decisions instruct, the Federal Constitution’s jury-trial guarantee proscribes a sentencing scheme *275 that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. Apprendi v. New Jersey, 530 U. S. 466 (2000); Ring v. Arizona, 536 U. S. 584 (2002); Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U. S. 220 (2005). “[T]he relevant 'statutory maximum,’ ” this Court has clarified, “is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” Blakely, 542 U. S., at 303-304 (emphasis in original). In petitioner’s case, the jury’s verdict alone limited the permissible sentence to 12 years. Additional factfinding by the trial judge, however, yielded an upper term sentence of 16 years. The California Court of Appeal affirmed the harsher sentence. We granted certiorari, 546 U. S. 1169 (2006), and now reverse that disposition because the four-year elevation based on judicial factfinding denied petitioner his right to a jury trial.
I
A
Petitioner John Cunningham was tried and convicted of continuous sexual abuse of a child under the age of 14. Under the DSL, that offense is punishable by imprisonment for a lower term sentence of 6 years, a middle term sentence of 12 years, or an upper term sentence of 16 years. Cal. Penal Code Ann. § 288.5(a) (West 1999) (hereinafter Penal Code). As further explained below, see infra, at 277-281, the DSL obliged the trial judge to sentence Cunningham to the 12-year middle term unless the judge found one or more additional facts in aggravation. Based on a post-trial sentencing hearing, the trial judge found by a preponderance of the evidence six aggravating circumstances, among them, the particular vulnerability of Cunningham’s victim, and Cunningham’s violent conduct, which indicated a serious danger to the community. Tr. of Sentencing (Aug. 1, 2003), *276 App. 22.[1] In mitigation, the judge found one fact: Cunningham had no record of prior criminal conduct. Ibid. Concluding that the aggravators outweighed the sole mitigator, the judge sentenced Cunningham to the upper term of 16 years. Id., at 23.
A panel of the California Court of Appeal affirmed the conviction and sentence; one judge dissented in part, urging that this Court’s precedent precluded the judge-determined four-year increase in Cunningham's sentence. No. A103501 (Apr. 18, 2005), App. 43-48; id., at 48-50 (Jones, J., concurring and dissenting).[2] The California Supreme Court denied review. No. S133971 (June 29, 2005), id., at 52. In a reasoned decision published nine days earlier, that court considered the question here presented and held that the DSL survived Sixth Amendment inspection. People v. Black, 35 Cal. 4th 1238, 113 P. 3d 534 (June 20, 2005).
B
Enacted in 1977, the DSL replaced an indeterminate sentencing regime in force in California for some 60 years. See id., at 1246, 113 P. 3d, at 537; Cassou & Taugher, Determinate Sentencing in California: The New Numbers Game, 9 Pac. L. J. 5, 6-22 (1978) (hereinafter Cassou & Taugher). Under *277 the prior regime, courts imposed open-ended prison terms (often one year to life), and the parole board — the Adult Authority — determined the amount of time a felon would ultimately spend in prison. Black, 35 Cal. 4th, at 1246, 1256, 113 P. 3d, at 537, 544; In re Roberts, 36 Cal. 4th 575, 588, n. 6, 115 P. 3d 1121, 1129, n. 6 (2005); Cassou & Taugher 5-9. In contrast, the DSL fixed the terms of imprisonment for most offenses, and eliminated the possibility of early release on parole. See Penal Code §3000 et seq. (West Supp. 2006); 3 B. Witkin & N. Epstein, California Criminal Law §610, p. 809 (3d ed. 2000); Brief for Respondent 7.[3] Through the DSL, California’s lawmakers aimed to promote uniform and proportionate punishment. Penal Code § 1170(a)(1); Black, 35 Cal. 4th, at 1246, 113 P. 3d, at 537.
For most offenses, including Cunningham’s, the DSL regime is implemented in the following manner. The statute defining the offense prescribes three precise terms of imprisonment — a lower, middle, and upper term sentence. E. g., Penal Code § 288.5(a) (West 1999) (a person convicted of continuous sexual abuse of a child “shall be punished by imprisonment in the state prison for a term of 6,12, or 16 years”). See also Black, 35 Cal. 4th, at 1247,113 P. 3d, at 538. Penal Code § 1170(b) (West Supp. 2006) controls the trial judge’s choice; it provides that “the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.” “[Circumstances in aggravation or mitigation” are to be determined by the court after consideration of several items: the trial record; the probation officer’s report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim’s family; “and any further evidence introduced at the sentencing hearing.” Ibid.
*278 The DSL directed the State’s Judicial Council[4] to adopt Rules guiding the sentencing judge’s decision whether to “[i]mpose the lower or upper prison term.” Penal Code § 1170.3(a)(2) (West 2004).[5] Restating § 1170(b), the Council’s Rules provide that “[t]he middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation.” Rule 4.420(a). “Circumstances in aggravation,” as crisply defined by the Judicial Council, means “facts which justify the imposition of the upper prison term.” Rule 4.405(d) (emphasis added). Facts aggravating an offense, the Rules instruct, “shall be established by a preponderance of the evidence,” Rule 4.420(b),[6] and must be “stated orally on the record,” Rule 4.420(e).
The Rules provide a nonexhaustive list of aggravating circumstances, including “[f]acts relating to the crime,” Rule 4.421(a),[7] “[fjacts relating to the defendant,” Rule 4.421(b),[8] and “[a]ny other facts statutorily declared to be circumstances in aggravation,” Rule 4.421(c). Beyond the enumerated circumstances, “the judge is free to consider any ‘ad *279 ditional criteria reasonably related to the decision being made.’ ” Black, 35 Cal. 4th, at 1247,113 P. 3d, at 538 (quoting Rule 4.408(a)). “A fact that is an element of the crime,” however, “shall not be used to impose the upper term.” Rule 4.420(d). In sum, California’s DSL, and the Rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts — whether related to the offense or the offender — beyond the elements of the charged offense.
Justice Alito maintains, however, that a circumstance in aggravation need not be a fact at all. In his view, a policy judgment, or even a judge’s “subjective belief” regarding the appropriate sentence, qualifies as an aggravating circumstance. Post, at 307-308 (dissenting opinion) (internal quotation marks omitted). California’s Rules, however, constantly refer to “facts.” As just noted, the Rules define “circumstances in aggravation” as “facts which justify the imposition of the upper prison term.” Rule 4.405(d) (emphasis added).[9] And “circumstances in aggravation,” the Rules unambiguously declare, “shall be established by a preponderance of the evidence,” Rule 4.420(b), a clear factfinding directive to which there is no exception. See People v. Hall, 8 Cal. 4th 950, 957, 883 P. 2d 974, 978 (1994) (“Selection of the upper term is justified only if circumstances in aggravation are established by a preponderance of evidence____” (emphasis added)).
While the Rules list “[g]eneral objectives of sentencing,” Rule 4.410(a), nowhere are these objectives cast as “circumstances in aggravation” that alone authorize an upper term *280 sentence. The Rules also state that “[t]he enumeration .. . of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made.” Rule 4.408(a). California courts have not read this language to unmoor "circumstances in aggravation” from any factfinding anchor.
In line with the Rules, the California Supreme Court has repeatedly referred to circumstances in aggravation as facts. See, e. g., Black, 35 Cal. 4th, at 1256, 113 P. 3d, at 544 ("The Legislature did not identify all of the particular facts that could justify the upper term.” (emphasis added)); People v. Wiley, 9 Cal. 4th 580, 587, 889 P. 2d 541, 545 (1995) (“[Tjrial courts are assigned the task of deciding whether to impose an upper or lower term of imprisonment based upon their determination whether there are circumstances in aggravation or mitigation of the crime, a determination that invariably requires numerous factual findings.” (emphasis added and internal quotation marks omitted)).
It is unsurprising, then, that State’s counsel, at oral argument, acknowledged that he knew of no case in which a California trial judge had gone beyond the middle term based not on any fact the judge found, but solely on the basis of a policy judgment or subjective belief. See Tr. of Oral Arg. 49-50.
Notably, the Penal Code permits elevation of a sentence above the upper term based on specified statutory enhancements relating to the defendant’s criminal history or circumstances of the crime. See, e.g., Penal Code §667 et seq. (West 1999); § 12022 et seq. (West 2000 and Supp. 2006). See also Black, 35 Cal. 4th, at 1257, 113 P. 3d, at 545, Unlike aggravating circumstances, statutory enhancements must be charged in the indictment, and the underlying facts must be proved to the jury beyond a reasonable doubt. Penal Code § 1170.1(e) (West 2004); Black, 35 Cal. 4th, at 1257,113 P. 3d, at 545. A fact underlying an enhancement cannot do double *281 duty; it cannot be used to impose an upper term sentence and, on top of that, an enhanced term. Penal Code § 1170(b). Where permitted by statute, however, a judge may use a fact qualifying as an enhancer to impose an upper term rather than an enhanced sentence. Ibid.; Rule 4.420(c).
II
This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. While this rule is rooted in longstanding common-law practice, its explicit statement in our decisions is recent. In Jones v. United States, 526 U. S. 227 (1999), we examined the Sixth Amendment’s historical and doctrinal foundations, and recognized that judicial fact-finding operating to increase a defendant’s otherwise maximum punishment posed a grave constitutional question. Id., at 239-252. While the Court construed the statute at issue to avoid the question, the Jones opinion presaged our decision, some 15 months later, in Apprendi v. New Jersey, 530 U. S. 466 (2000).
Charles Apprendi was convicted of possession of a firearm for an unlawful purpose, a second-degree offense under New Jersey law punishable by five to ten years’ imprisonment. Id., at 468. A separate “hate crime” statute authorized an “extended term” of imprisonment: Ten to twenty years could be imposed if the trial judge found, by a preponderance of the evidence, that “ ‘[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.’” Id., at 468-469 (quoting N. J. Stat. Ann. §2C:44-3(e) (West Supp. 1999-2000)). The judge in Apprendi’s case so found, and therefore sentenced the defendant to 12 years’ imprisonment. This Court held that the Sixth Amendment proscribed the enhanced sen *282 tence. 530 U. S., at 471. Other than a prior conviction, see Almendarez-Torres v. United States, 523 U. S. 224, 239-247 (1998), we held in Apprendi, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U. S., at 490. See also Harris v. United States, 536 U. S. 545, 557-566 (2002) (plurality opinion) (“Apprendi said that any fact extending the defendant’s sentence beyond the maximum authorized by the jury’s verdict would have been considered an element of an aggravated crime~~and thus the domain of the jury — by those who framed the Bill of Rights.”).
We have since reaffirmed the rule of Apprendi, applying it to facts subjecting a defendant to the death penalty, Ring, 536 U. S., at 602, 609., facts permitting a sentence in excess of the “standard range” under Washington’s Sentencing Reform Act, Blakely, 542 U. S., at 304-305, and facts triggering a sentence range elevation under the then-mandatory Federal Sentencing Guidelines, Booker, 543 U. S., at 243-244. Blakely and Booker bear most closely on the question presented in this case.
Ralph Howard Blakely was convicted of second-degree kidnaping with a firearm, a class B felony under Washington law. Blakely, 542 U. S., at 298-299. While the overall statutory maximum for a class B felony was ten years, the State’s Sentencing Reform Act (Reform Act) added an important qualification: If no facts beyond those reflected in the jury’s verdict were found by the trial judge, a defendant could not receive a sentence above a “standard range” of 49 to 53 months. Id., at 299-300. The Reform Act permitted but did not require a judge to exceed that standard range if she found “ 'substantial and compelling reasons justifying an exceptional sentence.’” Ibid, (quoting Wash. Rev. Code Ann. §9.94A. 120(2) (2000)). The Reform Act set out a non-exhaustive list of aggravating facts on which such a sentence elevation could be based. It also clarified that a fact taken *283 into account in fixing the standard range — i. e., any fact found by the jury — could under no circumstances count in the determination whether to impose an exceptional sentence. 542 U. S., at 299-300. Blakely was sentenced to 90 months’ imprisonment, more than three years above the standard range, based on the trial judge’s finding that he had acted with deliberate cruelty. Id., at 300.
Applying the rule of Apprendi, this Court held Blakely’s sentence unconstitutional. The State in Blakely had endeavored to distinguish Apprendi on the ground that “[u]nder the Washington guidelines, an exceptional sentence is within the court’s discretion as a result of a guilty verdict.” Brief for Respondent in Blakely v. Washington, O. T. 2003, No. 02-1632, p. 15. We rejected that argument. The judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty. Consequently, that fact was subject to the Sixth Amendment’s jury-trial guarantee. 542 U. S., at 304-314. It did not matter, we explained, that Blakely’s sentence, though outside the standard range, was within the 10-year maximum for class B felonies:
“Our precedents make clear... that the ‘statutory maximum ’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.... In other words, the relevant ‘statutory maximum’ is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts ‘which the law makes essential to the punishment,’... and the judge exceeds his proper authority.” Id., at 303-304 (quoting 1 J. Bishop, Criminal Procedure §87, p. 55 (2d ed. 1872); emphasis in original).
*284 Because the judge in Blakely’s case could not have imposed a sentence outside the standard range without finding an additional fact, the top of that range — 53 months, and not 10 years — was the relevant statutory maximum. 542 U. S., at 304.
The State had additionally argued in Blakely that Apprendi’s rule was satisfied because Washington’s Reform Act did not specify an exclusive catalog of potential facts on which a judge might base a departure from the standard range. This Court rejected that argument as well. “Whether the judge’s authority to impose an enhanced sentence depends on finding a specified fact.. ., one of several specified facts ... , or any aggravating fact (as here),” we observed, “it remains the case that the jury’s verdict alone does not authorize the sentence.” 542 U. S., at 305 (emphasis in original). Further, we held it irrelevant that the Reform Act ultimately left the decision whether or not to depart to the judge’s discretion: “Whether the judicially determined facts require a sentence enhancement or merely allow it,” we noted, “the verdict alone does not authorize the sentence.” Ibid., n. 8 (emphasis in original).
Freddie Booker was convicted of possession with intent to distribute crack cocaine and was sentenced under the Federal Sentencing Guidelines. The facts found by Booker’s jury yielded a base Guidelines range of 210 to 262 months’ imprisonment, a range the judge could not exceed without undertaking additional factfinding. Booker, 543 U. S., at 227, 233-234. The judge did so, finding by a preponderance of the evidence that Booker possessed an amount of drugs in excess of the amount determined by the jury’s verdict. That finding boosted Booker into a higher Guidelines range. Booker was sentenced at the bottom of the higher range, to 360 months in prison. Id., at 227.
In an opinion written by Justice Stevens for a five-Member majority, the Court held Booker’s sentence impermissible under the Sixth Amendment. In the majority’s *285 judgment, there was “no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [Blakely].” Id., at 238. Both systems were “mandatory and impose[d] binding requirements on all sentencing judges.” Ibid.[10] Justice Stevens’ opinion for the Court, it bears emphasis, next expressed a view on which there was no disagreement among the Justices. He acknowledged that the Federal Guidelines would not implicate the Sixth Amendment were they advisory:
“If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by [this case] would have been avoided entirely if Congress had omitted from the [federal Sentencing Reform Act] the provisions that make the Guidelines binding on district judges .... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.
*286 “The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges.” Ibid. (citations omitted).
In an opinion written by Justice Breyer, also garnering a five-Member majority, the Court faced the remedial question, which turned on an assessment of legislative intent: What alteration would Congress have intended had it known that the Guidelines were vulnerable to a Sixth Amendment challenge? Three choices were apparent: The Court could invalidate in its entirety the Sentencing Reform Act of 1984 (SRA), the law comprehensively delineating the federal sentencing system; or it could preserve the SRA, and the mandatory Guidelines regime the SRA established, by attaching a jury-trial requirement to any fact increasing a defendant’s base Guidelines range; finally, the Court could render the Guidelines advisory by severing two provisions of the SRA, 18 U. S. C. §§ 3553(b)(1) and 3742(e) (2000 ed. and Supp. IV). 543 U. S., at 246-249.[11] Recognizing that “reasonable minds can, and do, differ” on the remedial question, the majority concluded that the advisory Guidelines solution came closest to the congressional mark. Id., at 248-258.
Under the system described in Justice Breyer’s opinion for the Court in Booker, judges would no longer be tied to the sentencing range indicated in the Guidelines. But they would be obliged to “take account of” that range along with the sentencing goals Congress enumerated in the SRA at 18 *287 U. S. C. § 3553(a). 543 U. S., at 259, 264.[12] Having severed § 3742(e), the provision of the SRA governing appellate review of sentences under the mandatory Guidelines scheme, see supra, at 286, and n. 11, the Court installed, as consistent with the SRA and the sound administration of justice, a “reasonableness” standard of review. 543 U. S., at 261. Without attempting an elaborate discussion of that standard, Justice Breyer’s remedial opinion for the Court observed: “Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is reasonable.” Ibid.[13] The Court *288 emphasized the provisional character of the Booker remedy. Recognizing that authority to speak “the last word” resides in Congress, the Court said:
“The ball now lies in Congress’ court. The National Legislature is equipped to devise and install, long term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice.” Id., at 265.
We turn now to the instant case in light of both parts of the Court’s Booker opinion, and our earlier decisions in point.
Ill
Under California’s DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. See supra, at 277-278. An element of the charged offense, essential to a jury’s determination of guilt, or admitted in a defendant’s guilty plea, does not qualify as such a circumstance. See supra, at 278-279. Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with Blakely, therefore, the middle term prescribed in California’s statutes, not the upper term, is the relevant statutory maximum. 542 U. S., at 303 (“[T]he ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, see supra, at 278, the DSL violates Apprendi’s bright-line rule: Except for a prior conviction, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submit *289 ted to a jury, and proved beyond a reasonable doubt,” 530 U. S., at 490.
While “[t]hat should be the end of the matter,” Blakely, 542 U. S., at 313, in People v. Black, the California Supreme Court held otherwise. In that court’s view, the DSL survived examination under our precedent intact. See 35 Cal. 4th, at 1254-1261, 113 P. 3d, at 543-548. The Black court acknowledged that California’s system appears on surface inspection to be in tension with the rule of Apprendi. But in “operation and effect,” the court said, the DSL “simply authorize^] a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge’s selection of an appropriate sentence within a statutorily prescribed sentencing range.” 35 Cal. 4th, at 1254, 113 P. 3d, at 543. Therefore, the court concluded, “the upper term is the ‘statutory maximum’ and a trial court’s imposition of an upper term sentence does not violate a defendant’s right to a jury trial under the principles set forth in Apprendi, Blakely, and Booker.” Ibid. But see id., at 1270,113 P. 3d, at 554 (Kennard, J., concurring and dissenting) (“Nothing in the high court’s majority opinions in Apprendi, Blakely, and Booker suggests that the constitutionality of a state’s sentencing scheme turns on whether, in the words of the majority here, it involves the type of factfinding ‘that traditionally has been performed by a judge.’” (quoting id., at 1253, 113 P. 3d, at 542)).
The Black court’s conclusion that the upper term, and not the middle term, qualifies as the relevant statutory maximum, rested on several considerations. First, the court reasoned that, given the ample discretion afforded trial judges to identify aggravating facts warranting an upper term sentence, the DSL
“does not represent a legislative effort to shift the proof of particular facts from elements of a crime (to be proved to a jury) to sentencing factors (to be decided by a judge). . . . Instead, it afforded the sentencing judge *290 the discretion to decide, with the guidance of rules and statutes, whether the facts of the case and the history of the defendant justify the higher sentence. Such a system does not diminish the traditional power of the jury.” Id., at 1256, 113 P. 3d, at 544 (footnote omitted).
We cautioned in Blakely, however, that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury’s verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied. 542 U. S., at 305, and n. 8.
The Black court also urged that the DSL is not cause for concern because it reduced the penalties for most crimes over the prior indeterminate sentencing regime. 35 Cal. 4th, at 1256-1258, 113 P. 3d, at 544-545. But see id., at 1271-1272,113 P. 3d, at 555 (Kennard, J., concurring and dissenting) (“This aspect of our sentencing law does not differ significantly from the Washington sentencing scheme [the high court invalidated in Blakely.]”); supra, at 283-284. Furthermore, California’s system is not unfair to defendants, for they “cannot reasonably expect a guarantee that the upper term will not be imposed” given judges’ broad discretion to impose an upper term sentence or to keep their punishment at the middle term. 35 Cal. 4th, at 1258-1259, 113 P. 3d, at 545-546. The Black court additionally noted that the DSL requires statutory enhancements (as distinguished from aggravators) — e. g., the use of a firearm or other dangerous weapon, infliction of great bodily injury, Penal Code §§12022, 12022.7-.8 (West 2000 and Supp. 2006) — to be charged in the indictment and proved to a jury beyond a reasonable doubt. 35 Cal. 4th, at 1257, 113 P. 3d, at 545.
The Black court’s examination of the DSL, in short, satisfied it that California’s sentencing system does not implicate *291 significantly the concerns underlying the Sixth Amendment’s jury-trial guarantee. Our decisions, however, leave no room for such an examination. Asking whether a defendant’s basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the very inquiry Apprendi’s “bright-line rule” was designed to exclude. See Blakely, 542 U. S., at 307-308. But see Black, 35 Cal. 4th, at 1260, 113 P. 3d, at 547 (stating, remarkably, that “[t]he high court precedents do not draw a bright line”).[14]
Ultimately, the Black court relied on an equation of California’s DSL system to the post-Booker federal system. “The level of discretion available to a California judge in selecting which of the three available terms to impose,” the court said, “appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-Booker sentencing.” 35 Cal. 4th, at 1261, 113 P. 3d, at 548. The same equation drives Justice Alito’s dissent. See post, at 297 (“The California sentencing law ... is indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved in [Booker].”).
The attempted comparison is unavailing. As earlier explained, see supra, at 284-286, this Court in Booker held the Federal Sentencing Guidelines incompatible with the Sixth Amendment because the Guidelines were “mandatory and impose[d] binding requirements on all sentencing judges.” 543 U. S., at 233. “[Mjerely advisory provisions,” recommending but not requiring “the selection of particular sen *292 tences in response to differing sets of facts,” all Members of the Court agreed, “would not implicate the Sixth Amendment.” Ibid. To remedy the constitutional infirmity found in Booker, the Court’s majority excised provisions that rendered the system mandatory, leaving the Guidelines in place as advisory only. Id., at 245-246. See also supra, at 286-287.
California’s DSL does not resemble the advisory system the Booker Court had in view. Under California’s system, judges are not free to exercise their “discretion to select a specific sentence within a defined range.” Booker, 543 U. S., at 233. California’s Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham’s sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. Her instruction was to select 12 years, nothing less and nothing more, unless she found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.
Nevertheless, the Black court attempted to rescue the DSL’s judicial factfinding authority by typing it simply a reasonableness constraint, equivalent to the constraint operative in the federal system post-Booker. See 35 Cal. 4th, at 1261,113 P. 3d, at 548 (“Because an aggravating factor under California law may include any factor that the judge reasonably deems relevant, the [DSL’s] requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to Booker’s requirement that a federal judge’s sentencing decision not be unreasonable.”). Reasonableness, however, is not, as the Black court would have it, the touchstone of Sixth Amendment analysis. The reasonableness requirement Booker anticipated for the federal system operates within the Sixth Amendment constraints delineated in our precedent, not as a substitute for those *293 constraints. Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. It is comforting, but beside the point, that California’s system requires judge-determined DSL sentences to be reasonable. Booker’s remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless.[15]
To summarize: Contrary to the Black court’s holding, our decisions from Apprendi to Booker point to the middle term specified in California’s statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent.[16]
IV
As to the adjustment of California’s sentencing system in light of our decision, “[tjhe ball . . . lies in [California’s] *294 court.” Booker, 543 U. S., at 265; cf. supra, at 288. We note that several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing. They have done so by calling upon the jury — either at trial or in a separate sentencing proceeding — to find any fact necessary to the imposition of an elevated sentence.[17] As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. See supra, at 280, 290. Other States have chosen to permit judges genuinely “to exercise broad discretion .. . within a statutory range,”[18] which, “everyone agrees,” encounters no Sixth Amendment shoal.. Booker, 543 U. S., at 233. California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court’s decisions.
* * *
For the reasons stated, the judgment of the California Court of Appeal is reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

 The particular vulnerability of the victim is listed in Cal. Rule of Court 4.421(a)(3) (Criminal Cases) (West 2006) (hereinafter Rule), as a fact “relating to the crime.” Violent conduct indicating a serious danger to society is listed in Rule 4.421(b)(1) as a fact “relating to the defendant.”

 In addition to a Sixth Amendment challenge, Cunningham disputed the substance of five of the six findings made by the trial judge. The appellate panel affirmed the trial judge’s vulnerable victim and violent conduct findings, but rejected the finding that Cunningham abused a position of trust (because that finding overlapped with the vulnerable victim finding). The panel did not decide whether the judge’s other findings were warranted, concluding that she properly relied on at least two aggravating facts in imposing the upper term, and that it was not “reasonably probable” that a different sentence would have been imposed absent any improper findings. App. 43-46; id,., at 51 (May 4, 2005, order modifying opinion and denying rehearing).

 Murder and certain other grave offenses still carry lengthy indeterminate terms with the possibility of early release on parole. Brief for Respondent 7, n. 2. See, e. g., Penal Code § 190 (West Supp. 2006).

 The Judicial Council includes the chief justice and another justice of the California Supreme Court, three judges sitting on the Courts of Appeal, ten judges from the Superior Courts, and other nonvoting members. Cal. Const., Art. 6, § 6(a) (West Supp. 2006). The California Constitution grants the Council authority, inter alia, to “adopt rules for court administration, practice and procedure, and perform other functions prescribed by statute.” Ibid., § 6(d).

 The Rules were amended on January 1, 2007. Those amendments made technical changes, none of them material to the constitutional question before us. We refer in this opinion to the prior text of the Rules, upon which the parties and principal authorities rely.

 The judge must provide a statement of reasons for a sentence only when a lower or upper term sentence is imposed. Rules 4.406(b), 4.420(e).

 E. g., Rule 4.421(a)(1) (“[T]he fact that. . . [t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness.”).

 E. g., Rule 4.421(b)(1) (“[T]he fact that... [t]he defendant has engaged in violent conduct which indicates a serious danger to society.”).

 See also, e. g., Rule 4.420(b) (“Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation.” (emphasis added)); Rule 4.420(e) (court must provide “a concise statement of the ultimate facts that the court deemed to constitute circumstances in aggravation or mitigation” (emphasis added)).

 California’s DSL, we note in this context, resembles pre-Booker federal sentencing in the same ways Washington’s sentencing system did: The key California Penal Code provision states that the sentencing court “shall order imposition of the middle term” absent “circumstances in aggravation or mitigation of the crime,” § 1170(b) (West 2004) (emphasis added), and any move to the upper or lower term must be justified by “a concise statement of the ultimate facts” on which the departure rests, Rule 4.420(e) (emphasis added). But see post, at 303 (Alito, J., dissenting) (characterizing California’s DSL as indistinguishable from post-Booker sentencing).

 Title 18 U. S. C. § 3553(b)(1) mandated the imposition of a Guidelines sentence unless the district court found “an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” Section 3742(e) directed the court of appeals to determine, inter alia, whether the district court correctly applied the Guidelines, § 3742(e)(2), and, if the sentence imposed fell outside the applicable Guidelines range, whether the sentencing judge had provided a written statement of reasons, whether § 3553(b) and the facts of the case warranted the departure, and whether the degree of departure was reasonable, § 3742(e)(3).

 Section 3553(a) instructs sentencing judges to consider “the nature and circumstances of the offense and the history and characteristics of the defendant,” “the kinds of sentences available,” and the Guidelines and policy statements issued by the United States Sentencing Commission. § 3553(a)(1), (3)-(5). Avoidance of unwarranted sentencing disparities, and the need to provide restitution, are also listed as concerns to which the judge should respond. §3553(a)(6)-(7).
In a further enumeration, § 3553(a) calls for the imposition of “a sentence sufficient, but not greater than necessary” to “reflect the seriousness of the offense,” “promote respect for the law,” “provide just punishment for the offense,” “afford adequate deterrence to criminal conduct,” “protect the public from further crimes of the defendant,” and “provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.” § 3553(a)(2).

 While this case does not call for elaboration of the reasonableness check on federal sentencing post-Booker, we note that the Court has granted review in two cases raising questions trained on that matter: Claiborne v. United States, No. 06-5618, post, p. 1016; and Rita v. United States, No. 06-5754, post, p. 1016. In Claiborne, the Court will consider whether it is consistent with the advisory cast of the Guidelines system post-Booker to require that extraordinary circumstances attend a sentence varying substantially from the Guidelines. Rita includes the question whether is it consistent with Booker to accord a presumption of reasonableness to a within-Guidelines sentence.
In this regard, we note Justice Auto’s view that California’s DSL is essentially the same as post-Booker federal sentencing. Post, at 297-307. To maintain that position, his dissent previews, without benefit of briefing *288 or argument, how “reasonableness review,” post -Booker, works. Post, at 310-311. It is neither necessary nor proper now to join issue with Justice Auto on this matter.

 Justice Kennedy urges a distinction between facts concerning the offense, where Apprendi would apply, and facts concerning the offender, where it would not. Post, at 295 (dissenting opinion). Apprendi itself, however, leaves no room for the bifurcated approach Justice Kennedy proposes. See 530 U. S., at 490 (“[AJny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” (emphasis added)).

 Justice Alito, however, would do just that. His opinion reads the remedial portion of the Court’s opinion in Booker to override Blakely, and to render academic the entire first part of Booker itself. Post, at 810-311. There would have been no majority in Booker for the revision of Blakely essayed in his dissent. Grounded in a notion of how federal reasonableness review operates in practice, Justice Alito “necessarily anticipates” a question that will be aired later this Term in Rita and Claiborne. Post, at 311. See supra, at 287-288, n. 13. While we do not forecast the Court’s responses in those cases, we affirm the continuing vitality of our prior decisions in point.

 Respondent and its amici argue that whatever this Court makes of California’s sentencing law, the Black court’s “construction” of that law as consistent with the Sixth Amendment is authoritative. Brief for Respondent 6,18, 33; Brief for State of Hawaii et al. as Amici Curiae 17, 29. We disagree. The Black court did not modify California law so as to align it with this Court’s Sixth Amendment precedent. See 35 Cal. 4th, at 1273, 113 P. 3d, at 555-556 (Kennard, J., concurring and dissenting). Rather, it construed this Court’s decisions in an endeavor to render them consistent with California law. The Black court’s interpretation of federal constitutional law plainly does not qualify for this Court’s deference.

 States that have so altered their systems are Alaska, Arizona, Kansas, Minnesota, North Carolina, Oregon, and Washington. Alaska Stat. §§ 12.55.155(f), 12.55.125(c) (2004); Ariz. Rev. Stat. Ann. §13-702.01 (West Supp. 2006); Kan. Stat. Ann. §§21-4716(b), 21-4718(b) (2005 Supp.); Minn. Stat. §244.10, subd. 5 (2005 Supp.); N. C. Gen. Stat. Ann. § 15A-1340.16(al) (Lexis 2005); 2005 Ore. Sess. Laws, ch. 463, §§3(1), 4(1); Wash. Rev. Code §§ 9.94A.535,9.94A.537 (2006). The Colorado Supreme Court has adopted this approach as an interim solution. Lopez v. People, 113 P. 3d 713, 716 (2005) (en banc). See also Stemen & Wilhelm, Finding the Jury: State Legislative Responses to Blakely v. Washington, 18 Fed. Sentencing Rptr. 7 (Oct. 2005) (majority of affected States have retained determinate sentencing systems).

 See Ind. Code §35-50-2-1.3(a) (West Supp. 2006); Tenn. Code Ann. § 40-35-210(c) (2005 Supp.).