[No. B197189. Second Dist., Div. Eight. Dec. 19, 2007.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEMETRIUS LAMONT BROOKS, Real Party in Interest.

**COUNSEL**

Steve Cooley, District Attorney, Brentford J. Ferreira and Jessica Goulden, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michael P. Judge, Public Defender, Jeff Treloar and Albert J. Menaster, Deputy Public Defenders, for Real Party in Interest Demetrious Lamont Brooks.

**OPINION**

**COOPER, P. J.**—In this original proceeding, brought prior to a criminal trial, the People seek to amend an information to allege aggravating circumstances listed in California Rules of Court, rule 4.421 and secure a jury trial of those alleged aggravating circumstances. Our high court has disapproved of a similar procedure in *People v. Sandoval* (2007) 41 Cal.4th 825 [62 Cal.Rptr.3d 588, 161 P.3d 1146] (*Sandoval*), a case decided after the People

filed their petition and after we issued an alternative writ. Following *Sandoval*, we deny the petition, dissolve the alternative writ, and vacate the stay.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to a criminal trial, the People sought to amend an information to allege 10 aggravating circumstances in the trial of Demetrius Lamont Brooks. Specifically, the prosecution sought to allege all of the following: (1) "that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; (2) "that the victim was particularly vulnerable"; (3) "that the defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process"; (4) "that the defendant engaged in violent conduct which indicates a serious danger to society"; (5) "that the defendant's prior convictions as an adult are of numerous or increasing seriousness"; (6) "that the defendant has served a prior prison term"; (7) "that the defendant was on probation or parole when the crime was committed"; (8) "that the defendant's prior performance on probation or parole was unsatisfactory"; (9) "that the crime involved multiple victims"; and (10) "that the crimes occurred on separate occasions." Each of these was alleged to be within the meaning of California Rules of Court, rule 4.421 (rule 4.421).

The trial court sustained defendant's special demurrer to the amended information. The People sought a writ of mandate compelling the trial court to reverse its order sustaining defendant's demurrer to the aggravating circumstances. On March 13, 2007, this court issued an alternative writ of mandate and temporary stay order.

## DISCUSSION

In *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*), the United States Supreme Court held California's determinate sentencing law (DSL) unconstitutional because it violated a defendant's right to a jury trial by requiring a judge instead of a jury to make factual findings that subject a defendant to an upper term sentence. Applying *Cunningham*, in *Sandoval*, the California Supreme Court considered the appropriate process for resentencing a criminal defendant where an upper term sentence was found unconstitutional under *Cunningham*.

In considering this issue, the court held that resentencing under a discretionary scheme was preferable to permitting a jury trial on aggravating circumstances. (*Sandoval, supra,* 41 Cal.4th at pp. 848–851.)

Our high court's reasoning for rejecting the jury trial option is instructive in answering the question before us—whether the prosecution should be permitted to amend an information to allege aggravating circumstances. *Sandoval* explained that, although allowing a jury trial on aggravating circumstances, "would comply with the constitutional requirements of *Cunningham,* engrafting a jury trial onto the sentencing process established in the former DSL would significantly complicate and distort the sentencing scheme. Neither the DSL nor the Judicial Council's sentencing rules were drafted in contemplation of a jury trial on aggravating circumstances. It is unclear how prosecutors might determine which aggravating circumstances should be charged and tried to a jury, because no comprehensive list of aggravating circumstances exists." (*Sandoval, supra,* 41 Cal.4th at p. 848.)

The court further reasoned that the "Legislature authorized the trial court—not the prosecutor—to make the determination 'whether there are circumstances that justify imposition of the upper or lower term,' and to do so by considering the record of the trial, the probation officer's report, and statements submitted by the defendant, the prosecutor, and the victim or victim's family." (*Sandoval, supra,* 41 Cal.4th at p. 848; see Pen. Code, § 1170, subd. (b).)[1] "If the prosecutor were to decide which circumstances of the offense justify an upper term and thereby charge the defendant accordingly, the prosecutor would be exercising a form of discretion that the Legislature intended to be exercised by the court. To avoid that problem, a prosecutor might be limited to charging aggravating factors specified in rules or statutes, but that approach would distort the process in a different way—the scope of potentially aggravating circumstances would be severely limited." (*Sandoval, supra,* 41 Cal.4th at p. 848.)

The high court worried that reliance on the rules as guidance would pose difficult jury questions and potentially raise constitutional concerns. "[B]ecause the rules provide criteria intended to be applied to a broad spectrum of offenses, they are 'framed more broadly than' criminal statutes and necessarily 'partake of a certain amount of vagueness which would be impermissible if those standards were attempting to define specific criminal offenses.' " (*Sandoval, supra,* 41 Cal.4th at p. 840.) "Many of the aggravating circumstances described in the rules require an imprecise quantitative or compara-

---

[1] Undesignated statutory citations are to the Penal Code.

tive evaluation of the facts. For example, aggravating circumstances set forth in the sentencing rules call for a determination as to whether '[t]he victim was *particularly* vulnerable,' whether the crime 'involved a[] . . . taking or damage of great monetary value,' whether the 'quantity of contraband' involved was 'large.' " (*Id.* at p. 840, some italics omitted.) "Many of those circumstances are not readily adaptable . . . because they include imprecise terms that implicitly require comparison of the particular crime at issue to other violations of the same statute, a task a jury is not well suited to perform. For example, without some basis for comparing the instant offense to others, it would be difficult for a jury to determine whether '[t]he victim was *particularly* vulnerable,' or whether the crime 'involved . . . taking or damage of *great* monetary value' or 'a large quantity of contraband.' " (*Sandoval, supra,* 41 Cal.4th at p. 849.) "Some aggravating factors may not be identifiable until after the trial, such as whether the defendant 'unlawfully prevented or dissuaded witnesses from testifying . . . or in any other way illegally interfered with the judicial process.' " (*Ibid.*)[2]

At the time the People filed their writ petition, they did not have the benefit of the *Sandoval* opinion (and we did not have the benefit of this opinion when we issued the alternative writ). The People argue that the trial court has inherent authority to permit the circumstances in aggravation to be alleged in the information. *Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478 [56 Cal.Rptr.3d 660] (*Barragan*), a case relied upon by the People supports their argument. In *Barragan,* the Third District Court of Appeal held that sections

---

[2] The United States Supreme Court also was concerned with submitting questions to a jury in *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]. In that case, the United States Supreme Court found unconstitutional the federal sentencing guidelines and then considered the appropriate remedy. (*Ibid.*) The majority concluded that the guidelines should be advisory instead of mandatory to cure the constitutional problem with a concomitant change in the appellate standard of review. (*Id.* at p. 259.) The majority was concerned that engrafting the jury trial requirement on the guidelines would pose serious problems including the following: "How would courts and counsel work with an indictment and a jury trial that involved not just whether a defendant robbed a bank but also how? Would the indictment have to allege, in addition to the elements of robbery, whether the defendant possessed a firearm, whether he brandished or discharged it, whether he threatened death, whether he caused bodily injury, whether any such injury was ordinary, serious, permanent or life threatening, whether he abducted or physically restrained anyone, whether any victim was unusually vulnerable, how much money was taken, and whether he was an organizer, leader, manager, or supervisor in a robbery gang? [Citations.] If so, how could a defendant mount a defense against some or all such specific claims should he also try simultaneously to maintain that the Government's evidence failed to place him at the scene of the crime?" (*Id.* at p. 254.) By way of contrast, other states have chosen a different remedy and enacted legislation outlining a procedure for jury trials of aggravating factors. (*Cunningham, supra,* 549 U.S. at p. ___, fn. 17 [127 S.Ct. at p. 871, fn. 17].)

950 and 952 "do not, on their face, preclude allegations other than public offenses. Indeed, because a fact 'other than a prior conviction' used to impose the upper term must first be submitted to a jury and proved beyond a reasonable doubt, unless the accused waives the right to jury trial [citation], it now appears that to satisfy procedural due process, an aggravating fact must be charged in the accusatory pleading. [Citations.]"[3] (148 Cal.App.4th at p. 1483.) Therefore, the *Barragan* court allowed the prosecution to allege aggravating circumstances in an information. The *Barragan* court was persuaded that if it did not allow the People to amend the information, "it would create an absurd result, i.e., the prosecution would be unable to comply with the *Cunningham* holding that precludes an aggravating fact (other than a prior conviction) from being used to impose the upper term unless the fact has been submitted to a jury and proved beyond a reasonable doubt." (*Id.* at pp. 1483–1484.)

However, because *Sandoval* was decided after *Barragan*, the *Barragan* court did not consider the relevant findings in *Sandoval* including that the factors listed in the rules of court were designed for judicial discretion and many contain imprecise descriptions or require comparative findings. Although *Sandoval* involved the procedure for resentencing a criminal defendant after trial and appeal, the rationale in *Sandoval* is equally applicable to this case. Just as in *Sandoval*, a jury trial on the aggravated circumstances alleged by the prosecutor and listed in rule 4.421 would clothe the prosecutor with a form of discretion the Legislature intended to be exercised by the court and would introduce to the jury imprecise standards and ones requiring comparative evaluation. To amend the information the People seek to rely on a rule of court that was "not drafted with a jury in mind." (*Sandoval, supra*, 41 Cal.4th at p. 840.) Even if the jury findings were merely advisory to assist the court in its ultimate sentencing decision, something not requested by the People, "[m]any of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts." (*Sandoval, supra*, 41 Cal.4th at p. 840.) For example the People allege the victim was particularly vulnerable, something that requires comparative

---

[3] Section 950 provides: "The accusatory pleading must contain: [¶] 1. The title of the action, specifying the name of the court to which the same is presented, and the names of the parties; [¶] 2. A statement of the public offense or offenses charged therein." Section 952 provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ."

evaluation. And they allege that Brooks interfered with the judicial process, something that cannot be determined until after trial.

■ Adopting the procedures requested by the People and permitted in *Barragan* would create a procedure for a limited number of cases unprecedented in the pre-*Cunningham* cases and uncalled for under either the legislative amendment to comply with *Cunningham* or the judicial reformation as detailed in *Sandoval*. Both the Legislature, when it amended section 1170, and our high court when it determined the procedure for resentencing criminal defendants who had been improperly sentenced to a high term, concluded that the appropriate remedy is to allow for judicial discretion at sentencing rather than to try the aggravating circumstances to a jury. In the context of resentencing, our high court concluded, "to engraft a jury trial on the issue of aggravating circumstances onto the California sentencing scheme would create a sentencing system far different from—and far more complex than—the one intended by the California Legislature." (*Sandoval, supra*, 41 Cal.4th at p. 852.)

■ In light of *Sandoval*, we disagree with the *Barragan* court that the People should be permitted to amend an information to assert aggravating circumstances. Even though *Sandoval* expressly applied only to resentencing proceedings, its rationale describing the difficulties and potential constitutional concerns inherent in a jury trial is equally applicable to this case. The People cite no legal basis for the proposition that the trial court may exercise its inherent authority in a manner expressly disapproved by our high court, and we are required to follow our high court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[4] Therefore, we conclude that the trial court correctly struck the allegations of aggravating circumstances in the information.[5]

---

[4] We allowed the parties to file supplemental briefs after the Supreme Court decided *Sandoval*. In its supplemental brief, petitioner requests this court issue an order concerning sentencing. Such a request is premature and we do not consider it. Brooks has not been tried or convicted.

[5] The People argue that a demurrer is the wrong procedural mechanism for challenging aggravating factors in an information, an issue the People acknowledge they did not raise in the trial court. This is the same procedure followed in *Barragan*, in which the court held that sections 950 and 952 on their face do not preclude amending the information to allege aggravating factors. (*Barragan, supra*, 148 Cal.App.4th at p. 1483.) Those statutes, as the *Barragan* court acknowledges, require that the accusatory pleading state the accused has committed a public offense. Because there is no specific procedure for alleging aggravating factors there also is no specific procedure for attacking those allegations. In this unusual situation, we think that the demurrer challenging whether the accusatory pleading conforms to sections 950 and 952 is an appropriate procedural mechanism to challenge the addition of aggravating factors to the accusatory pleading, especially in this case where the issue was not raised in the trial court.

## DISPOSITION

The petition for a writ of mandate is denied. The alternative writ is dissolved and the temporary stay is vacated.

Rubin, J., and Flier, J., concurred.