**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4952**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RONALD L. HALSTEAD,

Defendant - Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Irene M. Keeley, Chief District Judge.  (1:01-cr-00045-IMK)

---

Submitted:  November 16, 2007          Decided:  January 9, 2008

---

Before WILLIAMS, Chief Judge, and MOTZ and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Richard A. Jaffe, Houston, Texas, for Appellant.  Sharon L. Potter, United States Attorney, Wheeling, West Virginia; Patrick M. Donley, Fraud Section, Criminal Division, Daniel S. Goodman, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ronald L. Halstead appeals, challenging his sentence on several grounds.  We affirm.

I.

A jury convicted Halstead of one count of conspiracy to commit mail fraud and health care fraud, in violation of 18 U.S.C. §§ 371, 1341, 1347, fourteen counts of health care fraud, in violation of 18 U.S.C. § 1347, and one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h).  The district court sentenced Halstead to 121 months imprisonment, to be followed by three years supervised release.  On appeal, we affirmed the convictions finding that "[t]he Government presented sufficient evidence to prove that Halstead created and instructed a system at the clinic to recruit new patients, convince them of the need for unnecessary treatments, perform the maximum amount of reimbursable treatments regardless of medical need, and then bill insurance companies under doctors' signatures without their consent. . . . [and also to] support[] Halstead's money laundering conviction." United States v. Filcheck, 165 F. App'x 284, 286-87 (4th Cir. 2006).  We vacated the sentence, however, and remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005), because the district court had treated the Sentencing

2

Guidelines as mandatory, rather than advisory. <u>Filcheck</u>, 165 F. App'x at 288 & n*.

On remand, the district court began by considering the appropriate guideline range.[1] The court found that it had clearly erred in computing Halstead's base offense level at the original sentencing. Under U.S.S.G. § 2S1.1(a), the base offense level is 23 if a person is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A), and the base offense level is 20 otherwise. Halstead was convicted of conspiracy to commit money laundering under 18 U.S.C. § 1956(h), and at the initial sentencing, the court had concluded that his base offense level was 20.

At resentencing, the court determined that Halstead merited a base offense level of 23 because § 1956(h) specifies that "[a]ny person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C.A. § 1956(h) (West 2000 & Supp. 2007); <u>see also</u> U.S.S.G. § 2X1.1(a) (specifying that the base offense level for conspiracy is the same as for the substantive offense). Halstead was convicted for conspiracy to violate § 1956(a)(1)(A), an offense receiving a base offense level of 23. The plain

_____

[1]The district court used the 1996 Guidelines at both hearings, and neither party contends that the court erred in doing so.

language of § 1956(h) and U.S.S.G. § 2X1.1(a) required that he receive the same base offense level as he would have received for the underlying offense, and thus the district court assigned him a base offense level of 23 instead of 20.

The court then turned to the amount of loss. At the initial sentencing, the district court had calculated the intended loss as $1.9 million in assessing the total offense levels for both the fraud and conspiracy to commit money laundering counts, respectively governed by U.S.S.G. § 2F1.1 and U.S.S.G. § 2S1.1. Under U.S.S.G. § 2S1.1(b)(2)(F), this intended loss required that the court add five offense levels.[2] Although on resentencing Halstead challenged this calculation on numerous grounds, the district court concluded that the measure was reasonable in light of the evidence. The court then carefully calculated Halstead's total offense level for the conspiracy to commit money laundering count, arriving at a total offense level of 34.

The court concluded that Halstead had an advisory guideline range of 151-188 months imprisonment. The district court considered the sentencing factors under 18 U.S.C. § 3553(a) and sentenced Halstead to 151 months incarceration, followed by three years of supervised release.

---

[2]The district court grouped the offense levels for the fraud counts and the conspiracy to commit money laundering count, pursuant to U.S.S.G. § 3D1.2(d).

II.

Halstead challenges his sentence on five grounds.  The Supreme Court recently held that "courts of appeals must review all sentences . . . under a deferential abuse-of-discretion standard," Gall v. United States, No. 06-7949, 552 U.S. ___, slip op. at 2 (Dec. 10, 2007).  Only "significant procedural error" -- such as failing to calculate (or improperly calculating) the guideline range -- or the substantive unreasonableness of a sentence merit the conclusion that the district court abused its discretion.  Id. at __, slip op. at 12.

A.

Halstead initially argues that only the jury could determine the amount of intended loss attributable to his conduct, citing United States v. Milam, 443 F.3d 382 (4th Cir. 2006) and Cunningham v. California, 127 S. Ct. 856 (2007).

In Cunningham, the Court applied "Apprendi's bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Cunningham, 127 S. Ct. at 868 (citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  In Milam, we vacated a sentence "which concededly involved facts that supported a sentence 'exceeding the maximums authorized by the facts established by a plea of guilty or a jury verdict.'" 443 F.3d at 388.  Both of these cases emphasize

5

that judges may not make factual determinations to increase a sentence <u>beyond the statutory maximum</u>.

But the Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." <u>Booker</u>, 543 U.S. at 233 (citations omitted). Here, the district court found the intended loss in order to determine the advisory guideline range and select the appropriate sentence within the statutory range. The district court's determination did not result in a sentence above the statutory maximum. Thus, Halstead had no right to a jury determination of the intended loss.

B.

Halstead next contends that the district court erred in calculating the $1.9 million intended loss because it adopted an allegedly arbitrary and unreliable methodology. Halstead also contends that, given the absence of a reliable method for calculating intended loss, the court should have looked to "gain" as an alternative.

The district court, relying upon <u>United States v. Miller</u>, determined that amount of "loss" should be assessed in this case by looking to the "intended loss." 316 F.3d 495, 501 (4th Cir. 2003).

The court determined the amount that the defendants charged, reduced that amount in light of the expected received to billed ratio, and then subtracted the amount the defendants would have been paid for the legitimate services performed during that time period.  Then the court determined the loss properly attributable to each defendant, see United States v. Bolden, 325 F.3d 471, 498 (4th Cir. 2003), and attributed the entire intended loss to Halstead because he was the "architect" of this carefully monitored scheme.

"[T]he Guidelines permit courts to use intended loss in calculating a defendant's sentence." Miller, 316 F.3d at 502.  We review the district court's factual determination of the amount of intended loss for clear error, recognizing that only a preponderance of the evidence need support these findings.  See id. at 498, 503.  "Moreover, 'the loss need not be determined with precision.  The court need only make a reasonable estimate of the loss, given the available information.'"  Id. at 503 (citing U.S.S.G. § 2F1.1, cmt. n.9).  After careful review of the record, we can only conclude that the district court carefully assessed the evidence before it and committed no reversible error in its determination of the amount of intended loss.

C.

Halstead's final argument with regard to intended loss is that the $1.9 million loss overstates the seriousness of his crimes.

7

Halstead notes that: he was required to pay restitution of only $46,000; his consulting firm received fees of only slightly more than $100,000; and he heavily disputed the loss calculation. Given these facts, Halstead suggests that using intended loss to calculate his sentence results in an unreasonable sentence in this case. The Government points out, however, that more than 40,000 patient visits to the clinic occurred during this time frame, and that Halstead had arranged for patient testing not on the basis of medical needs, but rather on insurance coverage. Further, Halstead organized the fraudulent scheme and the district court found him accountable for the entire intended loss because he was the "architect" of the scheme.

In reviewing the reasonableness of the sentence, Gall directs that we give due deference "to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justif[y] the sentence." Gall, 522 U.S. at __, slip op. at 21. This deference is justified because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." Id. at __, slip op. at 13 (emphasis added). The district court considered the Guidelines and the § 3553(a) factors, and explained that the "amount of loss in this case, [and] the amount of planning that went on and the type of crime" supported a sentence within the guideline range. Under

8

our deferential review of sentencing decisions, we cannot find that the court abused its discretion in reaching this conclusion.

D.

Halstead also argues that the district court erred in using the money laundering Guidelines. He contends that because the conspiracy to commit money laundering was inextricably related to the health care fraud, he should have been sentenced under the fraud Guidelines. Thus, Halstead asserts that the sentence was unreasonable because, as he sees it, only one crime occurred here, fraud.

We addressed a similar argument in United States v. Caplinger, 339 F.3d 226, 233-34 (4th Cir. 2003). There, the defendant argued that his conviction for money laundering under 18 U.S.C. § 1956 was essentially a fraud conviction, and he should have been sentenced under the fraud Guidelines. Id. at 233. We rejected this argument, reasoning that "Guidelines § 1B1.2(a), however, instructed the district court to refer to the Statutory Index (Appendix A) to identify the guidelines for the statutes of conviction. The index, in turn, directed the court to the money laundering guidelines, U.S.S.G. § 2S1.1, for [defendant's] convictions for money laundering under 18 U.S.C. § 1956." Id. at 233-34 (citations omitted). This rationale applies equally here.

9

Finally, Halstead contends that the law-of-the-case doctrine or mandate rule precluded the district court from revising its determination of his base offense level for the conspiracy to commit money laundering count from a 20 to a 23. Notably, Halstead does <u>not</u> dispute that, under the money laundering Guidelines, his base offense level should have been a 23. Rather, he contends that the district court violated its mandate on remand.

We have recognized that "to the extent that the mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, the district court may consider the issue de novo." <u>United States v. Bell</u>, 5 F.3d 64, 67 (4th Cir. 1993). In this case, we instructed the district court on remand to "first determine the appropriate sentencing range under the Guidelines." <u>Filcheck</u>, 165 F. App'x at 288. Thus, the district court did not err by correcting its prior mistake in assessing the base offense level for Halstead's conviction of conspiracy to commit money laundering under 18 U.S.C. § 1956.

III.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.