[No. B165767. Second Dist., Div. Eight. Aug. 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER ESQUIBEL, Defendant and Appellant.

540

COUNSEL

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

COOPER, P. J.—

## INTRODUCTION

Appellant challenges his conviction for four counts of attempted murder and one count of assault with a firearm. His initial contention is that the trial court improperly excluded two of his friends during the examination of a seven-year-old witness. We hold the temporary exclusion of these two spectators did not result in the violation of appellant's constitutional right to a public trial. We conclude that Penal Code section 686.2 has no application to this case.[1]

The United States Supreme Court granted certiorari in this case and vacated the judgment, for further consideration in light of *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]

---

[1] All further undesignated statutory references are to the Penal Code.

(*Cunningham*). We reconsider the sentence and find the imposition of the high term was appropriate. Appellant also challenges certain sentencing enhancements, which we modify. In all other respects, the judgment is affirmed.

## PROCEDURAL BACKGROUND

In an information filed by the District Attorney of Los Angeles County, appellant was charged with five counts[2] of attempted, willful, deliberate, and premeditated murder. (§§ 664, 187, subd. (a).) Count 1 further alleged that in the commission of the crime, appellant personally inflicted great bodily injury upon the victim, causing the victim to suffer paralysis and become comatose due to brain injury. (§ 12022.7, subd. (b).) The information additionally alleged as to all counts that a principal personally and intentionally discharged a firearm, thereby causing great bodily injury to the victims (§ 12022.53, subds. (d), (e)(1)); that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)(1)); and that a principal personally used a firearm (§ 12022.53, subds. (b), (e)). The information also alleged that the offenses charged therein were committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1).)

Appellant was tried by a jury and found guilty of willful, deliberate and premeditated attempted murder on four counts (counts, 1, 2, 3, and 5) and guilty of the lesser included offense of assault with a firearm on one count (count 4; § 245, subd. (a)(2)). The jury found to be true the allegations in count 1 that appellant personally inflicted great bodily injury upon the victim, thereby causing the victim to suffer paralysis, and that appellant personally and intentionally discharged a firearm, thereby proximately causing great bodily injury to the victim. The jury further found to be true, as to all five counts, the allegations that in the commission of the crimes, appellant acted for the benefit of, at the direction of, or in association with a criminal street gang with the intent to promote, further, or assist in criminal conduct by gang members. With respect to counts 2 through 5, the jury found that in the commission of the offenses, appellant personally and intentionally discharged a firearm and that he personally used a firearm.

Probation was denied and appellant was sentenced as follows: count 1, life imprisonment, with a minimum term of 15 years on account of the gang allegation, plus 25 years to life for the use of firearm with great bodily injury

---

[2] The victims were as follows: count 1, Taalefuli Ryan; count 2, Rayna Mulipola; count 3, Andrea Martin; count 4, Victor Martin; and, count 5, Jason Ryan.

enhancement, plus five years for the great bodily injury enhancement, for a total of 40 years to life plus five years; count 2, life imprisonment for attempted murder, with a minimum term of 15 years to life on account of the gang allegation, plus 20 for the use of firearm enhancement. The term for count 2 was ordered to run consecutive to count 1. On counts 3 and 5, the trial court imposed concurrent sentences identical to count 2. On count 4, the trial court imposed the upper term of 4 years for assault with a firearm.

Appellant filed a filed a timely notice of appeal on March 11, 2003.

In June of 2004, the United States Supreme Court decided *Blakely v. Washington* (2004) 542 U.S 296, 303–304 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*) which held that under the Sixth Amendment right to a jury trial, the maximum sentence a judge may impose is that permitted by the facts established by the jury verdict or admitted by the defendant. The parties filed supplemental briefs in September and October 2004. Appellant further contended that the imposition of the upper term on count 4 violated his right to a jury trial as set forth in *Blakely*.

In our first opinion issued on December 30, 2004,[3] we affirmed the judgment, but ordered the case remanded to the trial court for appropriate findings per *Blakely*. Both sides filed petitions for review in the California Supreme Court. On March 16, 2005, the California Supreme Court granted respondent's petition and denied appellant's petition for review. On September 9, 2005, the California Supreme Court remanded the case to this court for further consideration in light of *People v. Black* (2005) 35 Cal.4th 1238, 1257–1261 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*). In *Black I*, the California Supreme Court held that California's determinate sentencing law (DSL) did not violate *Blakely*, and a trial court retains the discretion to impose the upper term sentence based on aggravating factors found by the court.

On September 28, 2006, we again affirmed the judgment of conviction, and issued our second opinion in which we remanded the matter again for re-sentencing. (*People v. Esquibel* (2006) 143 Cal.App.4th 645 [49 Cal.Rptr.3d 393] (*Esquibel II*).) We rejected appellant's sentencing claim, citing *Booker* and *Black I*. We affirmed the judgment of the trial court with the exception of an improperly imposed enhancement. Appellant subsequently filed a petition for review in the California Supreme Court. On December 20, 2006, the California Supreme Court denied the petition.

On January 22, 2007, the United States Supreme Court decided *Cunningham, supra,* 549 U.S. 270. *Cunningham* held California's DSL was

---

[3] *People v. Esquibel* (Dec. 30, 2004, B165767) (nonpub. opn.) (*Esquibel I*).

unconstitutional, disagreeing with the California Supreme Court's decision in *Black I.* (*People v. Black, supra,* 35 Cal.4th 1238, judg. vacated and cause remanded *sub nom. Black v. California* (2007) 549 U.S. 1190 [167 L.Ed.2d 36, 127 S.Ct. 1210].) The United States Supreme Court held that California's DSL violates the Sixth Amendment to the extent it allows a trial court to impose an upper term based on facts not found by the jury.

On March 20, 2007, Defendant filed a petition for a writ of certiorari in the United States Supreme Court. Thereafter, the United States Supreme Court granted defendant's certiorari petition, vacated our judgment in *Esquibel II,* and on May 29, 2007, remanded the matter to us for further consideration in light of *Cunningham.*

## STATEMENT OF FACTUAL HISTORY

Before analyzing the *Cunningham* issue, we adopt and restate the portions of our original decision that stated the underlying facts, and rejected Esquibel's nonsentencing contention—that the trial judge improperly excluded two spectators from the trial.

The charges against appellant arose from an egregious set of facts, the entire restatement of which is not relevant to the outcome of the appeal. What is relevant is that the charges arose from an incident where a lone gunman came into a public park and shot at a group of adults and children playing in the park. A bullet grazed one of the children. Several adults chased after the shooter, who turned and shot again. One parent (victim in count 1) was shot and paralyzed. Evidence from the incident and expert testimony suggested that the shooting was done for the benefit of a criminal street gang.

The initial contention in this appeal concerns the trial court's decision to exclude two apparent friends of appellant from the courtroom during the examination of a seven-year-old boy. The discussion regarding the presence of these spectators began prior to the opening statements in this case. On January 22, 2003, outside of the presence of the jury, the prosecutor informed the trial court that because of the "gang implications" of this case, the mother of a seven-year-old witness was "concerned about retaliation in the neighborhood." The mother asked for several accommodations to limit the possibility that her son would be identified. Specifically, she asked if he could testify under the name of John Doe, instead of his own name. The mother also was concerned about having her son testify in the courtroom while certain persons were in the audience inside the courtroom. The prosecutor explained to the trial judge: "And she's also concerned about having—when the child testifies having audience members in the court, as well. I assured—I don't see any people who appear to be friends of the defendant as far as young males here

this morning. And I know his mother who, obviously, has a right to be here. [¶] There is one other person who is present, I think, associated with perhaps a mother or an aunt of some of his fellow gang members. And I'm concerned about her presence during the testimony of the child. And I ask that she be excluded as well as any young male Hispanics that might show up this morning, just for the children's testimony."

The defense counsel indicated that she would object to all of these requests and stated: "And as far as people in the audience coming in to testify [*sic*], I don't think there has been a showing that there has been any intimidation or any threats by anyone. This is an open proceeding."

Defense counsel explained that the men in question were friends of appellant's family. She stated, "just because the witnesses feel that for some reason they may be in danger coming here, I don't think that is a justifiable reason. There is no actual showing of danger to exclude these people from the courtroom."

The trial court indicated it understood the prosecutor was suggesting that the court exclude young Hispanic males during testimony of the child witness in question. The court added that it understood there was "implied intimidation" and that people living in a neighborhood "infested with these gang people" were concerned and frightened. However, the court acknowledged that it had not yet received any information that there was a danger to any witness at that point in time and it would have to see a danger to a witness. The trial court then denied the prosecutor's request.

Later, after her opening statements to the jury, the prosecutor engaged in the following discussion with the court:

"[Prosecutor]: I have the child's mother here. And I want a clarification first on the early ruling. I notice that there are two of the defendant's friends who have appeared since I made my motion this morning. And I would ask that during the child's testimony only that they be excluded for the reason, the reasons that I set forth. It is intimidation factor. [¶] . . . [¶]

"The Court: Does the child recognize either of those?

"[Prosecutor]: Your Honor, the mother's concern is they will recognize the child when they see him in the neighborhood. And that puts the child's life in danger. It's not that the child recognizes them. It is that they will recognize

the child." The trial judge called counsel to sidebar and granted the "People's motion to the court to exclude public from courtroom during minor witness's testimony . . . ." The judge then stated: "Certainly the Court has to recognize when we have a witness that is a young witness that we have to make certain accommodations for such a witness. I think probably the appropriate thing, if these are friends of the defendant, why don't you just ask them to wait outside for the giving of this one testimony, and they can come back in thereafter. I don't see any harm will be done whatsoever. Certainly, a child is subject to intimidation, as are adults, but a child more so. And I think it would be the appropriate thing to do under these circumstances." Defense counsel then spoke to the judge: "Your honor, then what I would ask this person, I have no interest—I could care less if they're here or not.[4] I did speak with my client. He does know them. I also spoke to his family friends and told them to make sure there is no contact whatsoever between any spectator and the witnesses, no riding the elevator, no looks, nothing that could be mistaken the wrong way." Defense counsel went on to say she would ask the two individuals to step out of the courtroom during the child witness's testimony, and she asked the trial court to take a break before the witness took the stand so the jury would not see the two individuals coming in and out of the courtroom. Defense counsel then repeated:

"I understand the district attorney's concern and I understand the position. But I just think this is an open proceeding. There has been absolutely no showing of any threats made. Like the court indicated, I mean, are these people that the child even recognizes? And if so, how is the witness being intimidated?

"The Court: Well, again, we are dealing with a very youthful witness. And I'm sure it is a traumatic thing for a witness that age to come into court, anyway, is intimidating. Just in the interest of being sure that the child can relax as much as possible, it would be appropriate for these two gentlemen to leave just during this witness's testimony. Thereafter they can come back as long as they conduct themselves in the proper fashion."

Defense counsel also asked the court to take a five-minute break after the testimony of the child witness was completed, so that the two individuals who were going to be excluded during the witness's testimony could return to the courtroom. The trial court granted this request.

---

[4] Respondent suggests that this statement of defense counsel reflects a waiver of the objection regarding an open and public trial. Given the context of the statement and the prior clearly stated objections of defense counsel, we find the suggestion of a possible express waiver to be both unsupported and an unreasonable interpretation of the facts.

## CONTENTIONS ON APPEAL

*Right to Public Trial*

Appellant's initial contention is that the exclusion of two spectators who were friends of appellant violated his constitutional and statutory rights to a public trial.[5] Appellant cites *People v. Cummings* (1993) 4 Cal.4th 1233 [18 Cal.Rptr.2d 796, 850 P.2d 1] (*Cummings*), in support of his argument regarding the constitutional violation. In *Cummings*, a defendant convicted of murdering a peace officer claimed that the trial court erred when it failed to excuse a number of uniformed police officers in the courtroom as spectators. Rejecting the argument, the Supreme Court held: "In this case there was no effort to close the proceedings. Nonetheless, Cummings sought to exclude a segment of the public. As members of the public, the police officers had both common law and constitutionally based rights to attend the trial. Exclusion of any group on the basis of the members' status would be impermissible." (*Cummings, supra*, 4 Cal.4th at pp. 1298–1299.) Appellant argues "the exclusion of Mr. Esquibel's friends was an especially egregious violation of Mr. Esquibel's right to a public trial, because preserving the ability of a defendant to have his friends and other supporters attend his trial is one of the core purposes of the public trial guarantee."

Appellant then states that no reported case has decided whether the exclusion of a spectator violates a defendant's right to a public trial absent compliance with section 686.2. Appellant argues that the exclusion of appellant's friends fails to satisfy any of the requirements of section 686.2, which provides guidelines for the exclusion of spectators.

Appellant argues the trial court's exclusion of his friends from the courtroom during trial testimony violated his constitutional and statutory rights to a public trial and that error requires reversal of the judgment in this case. He argues further that no showing of prejudice is required by him if such a violation has occurred.

---

[5] Section 686.2 provides: "(a) The court may, after holding a hearing and making the findings set forth in subdivision (b), order the removal of any spectator who is intimidating a witness. [¶] (b) The court may order the removal of a spectator only if it finds all of the following by clear and convincing evidence: [¶] (1) The spectator to be removed is actually engaging in intimidation of the witness. [¶] (2) The witness will not be able to give full, free, and complete testimony unless the spectator is removed. [¶] (3) Removal of the spectator is the only reasonable means of ensuring that the witness may give full, free, and complete testimony. [¶] (c) Subdivision (a) shall not be used as a means of excluding the press or a defendant from attendance at any portion of a criminal proceeding."

*Sentencing Errors*

Appellant argues that his Sixth Amendment right to a fair and impartial jury was violated by the trial court's imposition of the upper term on both convictions because the terms were based on facts not determined to be true by a jury.

His second claimed sentencing error deals with count 1. The trial court imposed both a 25-year-to-life enhancement based on the jury's finding that appellant personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) and a five-year enhancement based on the jury's finding that appellant personally inflicted great bodily injury (§ 12022.7) on Ryan, causing him to suffer paralysis. Respondent concedes this was sentencing error.

*Respondent's Contentions*

In his brief respondent acknowledges both the United States Constitution and the California Constitution provide that a person charged with a criminal offense is entitled to a public trial and "[a] public trial ordinarily is one which is open to the general public at all times. (*People v. Woodward* (1992) 4 Cal.4th 376, 383 [14 Cal.Rptr.2d 434, 841 P.2d 954]; *People v. Byrnes* (1948) 84 Cal.App.2d 72, 73 [190 P.2d 290].)" Nevertheless, in defense of the action of the trial court, respondent argues that "[a] trial court has discretion to close a portion of a trial to the public even without the consent of or waiver by the defendant when there is good cause for such action based upon justice or protection of the parties. (*People v. Cash* (1959) 52 Cal.2d 841, 846 [345 P.2d 462].)" Alternatively, respondent argues that the trial court "properly excluded these two person [*sic*] in order to protect child witness from harassment and possible physical harm" and that the error, if any, was clearly harmless beyond a reasonable doubt.

Regarding the alleged sentencing errors, respondent contends further that *Blakely* does not preclude a trial court from making the requisite findings on aggravating circumstances to support an upper term sentence of imprisonment under California law and the imposition of the upper term of four years did not violate *Blakely*. Lastly, respondent contends that the sentencing error, if any, was harmless rather than prejudicial to appellant.

## DISCUSSION

*Right to Public Trial*

This opinion commences with the resolution of two questions: first, whether the exclusion of two spectators from appellant's trial was a violation

of either his constitutional or statutory right to a public trial; and second, if there was any violation, what is the remedy. We conclude in this instance there was no constitutional violation and that any violation of appellant's statutory right to an open trial (§ 686.2) was de minimis and not prejudicial. We explain.

*Constitutional Right to a Public Trial*

The right to a public trial is deeply rooted in the history and jurisprudence of our nation. The origins of the right trace back to the Magna Carta and the Bible. As a result of our history, we distrust secret inquisitions and Star Chamber proceedings. Accordingly, in criminal cases, both the United States and the California Constitutions guarantee the right to a public trial. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.)[6]

The observance of the right to a public trial precludes the closure of substantive courtroom proceedings in criminal cases. " 'The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . .' " (*In re Oliver* (1948) 333 U.S. 257, 270, fn. 25 [92 L.Ed. 682, 68 S.Ct. 499] (*Oliver*).) "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." (*Waller v. Georgia* (1984) 467 U.S. 39, 46 [81 L.Ed.2d 31, 104 S.Ct. 2210] (*Waller*); see also *People v. Woodward, supra,* 4 Cal.4th at p. 381 (*Woodward*), cert. den. *sub nom. Woodward v. California* (1993) 507 U.S. 1053 [123 L.Ed.2d 655, 113 S.Ct. 1950] [federal and state constitutional rights to public trial are coextensive].)

Due to its constitutional significance and the difficulty of proving prejudice, when a violation of the right to a public trial has occurred, there is no requirement to prove any specific prejudice to the appellant. (See *Waller,*

---

[6] The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The right to a speedy and public trial is only one of several rights contained in the Sixth Amendment to the United States Constitution. The Sixth Amendment also guarantees the right to counsel, the right to present evidence on one's own behalf, and the right to confront one's adverse witnesses. (U.S. Const., 6th Amend.)

Article I, section 15 of the California Constitution provides, in pertinent part, that "[t]he defendant in a criminal cause has the right to a speedy public trial . . . ." With adoption of California Constitution, article I, section 29 by initiative in 1990, "the *people* of the State of California" have an articulated state constitutional right to public trial of criminal cases. (Italics added.)

*supra*, 467 U.S. at p. 45; *Arizona v. Fulminante* (1991) 499 U.S. 279 [113 L.Ed.2d 302, 111 S.Ct. 1246]; *People v. Byrnes, supra*, 84 Cal.App.2d 72.)

■ The right to an open public trial is not the right of only the criminal defendant, but is rather a shared right of the accused and the public, the common concern being the assurance of fairness. (*Los Angeles Times v. Superior Court* (2003) 114 Cal.App.4th 247 [7 Cal.Rptr.3d 524].) The term "public trial" has no single description, but is used in a relative sense and its meaning depends largely upon the circumstances of each particular case. (*People v. Buck* (1941) 46 Cal.App.2d 558 [116 P.2d 160].)

Importantly, the United States Supreme Court "has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care." (*Waller, supra*, 467 U.S. at p. 45.) Consequently both the defendant's and the public's right may be subjected to reasonable restrictions that are necessary or convenient to the orderly procedure of trial, and the trial court retains broad discretion to control courtroom proceedings in a manner directed toward promoting the safety of witnesses. (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121 [99 Cal.Rptr.2d 149, 5 P.3d 203].)

■ In general, there are two types of exclusions: a total closure where all spectators are directed to leave the courtroom and a partial closure where some, but not all, spectators are asked to leave.[7] The total closure of the courtroom is almost always a per se violation of the constitutional rights of the accused. In the case of a partial closure, the Sixth Amendment public trial guarantee creates a " 'presumption of openness' " that can be rebutted only by a showing that exclusion of the public was necessary to protect some " 'higher value' " such as the defendant's right to a fair trial, or the government's interest in preserving the confidentiality of the proceedings. (See *Waller, supra*, 467 U.S. at pp. 44–45.) When such a "higher value" is advanced, the trial court must balance the competing interests and allow a form of exclusion no broader than needed to protect those interests. (*Ibid.*) Specific written findings are required to enable a reviewing court to determine the propriety of the exclusion. (*Id.* at p. 45.) There is also a subcategory

---

[7] Numerous cases and articles have discussed the topic of partial closure of a public trial. (See Note, *Constitutional Law—Sixth Amendment—Right to Public Trial* (1949–1950) 23 So.Cal. L.Rev. 91; Annot., Exclusion of Public from State Criminal Trial in Order to Preserve Confidentiality of Undercover Witness (1987) 54 A.L.R.4th 1156; Annot., Exclusion of Public from State Criminal Trial in Order to Prevent Disturbance by Spectators or Defendant (1987) 55 A.L.R.4th 1170; Annot., Exclusion of Public from State Criminal Trial in Order to Avoid Intimidation of Witness (1987) 55 A.L.R.4th 1196.)

of the partial closure which includes the circumstances of this case where only certain identified spectators are excluded.

The identity of the spectator sought to be excluded is highly relevant in a partial closure situation. The United States Supreme Court made the following important observation in the *Oliver* case: Absent certain special circumstances not relevant here, "[N]o court in this country has ever before held, so far as we can find, that an accused can be tried, convicted, and sent to jail, when everybody else is denied entrance to the court, except the judge and his attaches. *And without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged.*" (*Oliver, supra,* 333 U.S. at pp. 271–272, fn. omitted & italics added; see also *State v. Ortiz* (1999) 91 Haw. 181 [981 P.2d 1127] [complete exclusion of appellant's family members].) The application of the above principles and the issue whether an accused has been denied his constitutional right to a public trial cannot be determined in the abstract, but must be determined by reference to the facts of the particular case. (*People v. Cash, supra,* 52 Cal.2d 841, 847.)

### California Constitutional Law

■ The leading California case on the exclusion of spectators from a trial is *Woodward, supra,* 4 Cal.4th 376. In *Woodward,* during the closing arguments, at the request of the trial judge the bailiff posted a sign on the courtroom doors announcing "trial in progress—please do not enter." Courtroom spectators who were already present were not required to leave and additional spectators were permitted to enter at designated recesses. Neither defense counsel nor the defendant was asked to agree with this procedure. In considering the propriety of this procedure, the Supreme Court held: "[T]he right to public trial encompasses the closing argument phase of the trial. But we also conclude that the closure of the courtroom doors to additional spectators during part of the prosecutor's arguments, being both temporary in duration and motivated by legitimate concerns to maintain security and prevent continuous interruptions of closing arguments, and not involving the exclusion of preexisting spectators, did not constitute a denial of defendant's public trial right." (*Id.* at p. 381.) The *Woodward* court then cited several federal cases that held the temporary exclusion of the public did not seriously deprive a defendant of his public trial right.[8]

---

[8] "In *Snyder* v. *Coiner* (4th Cir. 1975) 510 F.2d 224, 230, a bailiff temporarily refused to allow persons to enter or exit the courtroom during closing arguments, in order to minimize distractions or disturbances. The federal court, rejecting the defendant's public trial claim, observed that the closure of the courtroom lasted only 'a short time,' did not restrict the defendant, his family, witnesses, or even the previously admitted courtroom spectators, and 'was entirely too trivial to amount to a constitutional deprivation.' (*Ibid.*; see also *U.S.* v.

*Application to Present Case*

The exclusion in this case was a partial exclusion of two Hispanic male spectators during the testimony of a single minor witness. There was no evidence of any special relationship between the spectators and appellant, other than friendship. There seems to be no dispute that appellant's family members remained in the courtroom during this examination. These spectators were removed at the request of the prosecutor based on the concern and urging of the mother of the witness. Her principal concern in this gang-related case was that the spectators might be gang members and would recognize her child in the neighborhood, not that her child might recognize them. There was no evidence of intimidation or harassment. Over the objection of appellant, the trial court excluded these spectators during the child's examination. There was no compliance with section 686.2, nor did the procedure attempt to meet the test suggested by *U.S. v. Sherlock, supra*, 865 F.2d 1069.

■ Nevertheless, based on the California and federal authority described above, we conclude that this exclusion was not a violation of appellant's constitutional right to an open trial. There was no order excluding the press or the public in general. Except for these two spectators, no one else connected with appellant was excluded from the courtroom and the exclusion was only during the testimony of the single witness. Members of appellant's family remained in the courtroom. There was no showing that the excluded individuals had any special relationship to appellant or were needed to provide him support during the trial.

We conclude the partial closure of a trial by the temporary exclusion of select supporters of the accused does not create an automatic violation of the constitutional right to a public trial. Furthermore, on the facts of this case, we conclude there was no constitutional violation of appellant's rights. To hold otherwise would not serve the purposes of the public trial right. Here, the exclusion of the spectators was for a minimal amount of time and appellant's family supporters remained in the courtroom.

*California Statutory Law*

■ In addition to state and federal constitutional requirements, in California there are statutes setting forth requirements for excluding certain spectators

*Sherlock* (9th Cir. 1989) 865 F.2d 1069, 1076–1077 [applying less exacting 'substantial reason' standard for determining propriety of partial exclusion of public from courtroom]; *Davis* v. *Reynolds* (10th Cir. 1989) 890 F.2d 1105, 1109–1110, and cases cited [same]; *Douglas* v. *Wainwright* (11th Cir. 1984) 739 F.2d 531 [same]; *United States ex rel. Lloyd* v. *Vincent* (2d Cir. 1975) 520 F.2d 1272, 1274–1275 [temporary exclusion of public did not 'seriously deprive' defendant of his public trial right]; *State* v. *Shaw* (Tenn.Crim.App. . . . 1981) 619 S.W.2d 546, 548 [temporary closure of courtroom doors *during closing arguments* to avoid interruptions held not violative of public trial guarantee].)" (*Woodward, supra*, 4 Cal.4th at p. 384.)

from a public criminal trial. "A trial court also retains broad discretion to control courtroom proceedings in a manner directed toward promoting the safety of witnesses. (See, e.g., § 868.7, subd. (a)(2) [upon motion of the prosecutor, a magistrate may close the examination of a witness '[w]hose life would be subject to a substantial risk in appearing before the general public']; see also § 686.2 [authorizing the trial court to remove any spectator who is intimidating a witness]; § 867 [authorizing the magistrate to exclude potential and actual witnesses upon motion of either party]; § 868 [authorizing the magistrate to exclude the public upon the request of the defendant and a finding by the magistrate 'that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial']; *People v. Woodward*[, *supra*,] 4 Cal.4th [at pp.] 382–386 . . . [upholding the temporary closure of the courtroom to additional spectators during a murder trial, in view of the 'unusual security risks' posed by the trial]; *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1222, fn. 46 [86 Cal.Rptr.2d 778, 980 P.2d 337] [noting that among the 'overriding interests' that may justify closure of a courtroom in an appropriate instance is the protection of witnesses from intimidation].)" (*Alvarado v. Superior Court, supra*, 23 Cal.4th at p. 1150.)

█ Appellant contends that the exclusion of the spectators in this case violated section 686.2, subdivision (b), which provides that a court may order the removal of any spectator who is intimidating a witness, but only after holding a hearing and making the following findings by clear and convincing evidence:

"(1) The spectator to be removed is actually engaging in intimidation of the witness.

"(2) The witness will not be able to give full, free, and complete testimony unless the spectator is removed.

"(3) Removal of the spectator is the only reasonable means of ensuring that the witness may give full, free, and complete testimony."

We agree with appellant that the record shows the exclusion of the spectators in this case was not in compliance with section 686.2. However, we find that section 686.2 has no application to the facts of this case. By its own terms, it only applies when there is a proposed exclusion of a spectator who is engaged in the active intimidation of a witness. When the predicate facts are present, the statute directs the court how to handle the exclusion of the offending spectator. Here, there is no evidence of any intimidation by the spectators in this case. They were excluded based solely on the concerns of

the witness's mother for the safety of her child. There is no evidence of any conduct, act or attitude by the spectators which would call for the application of section 686.2.

Although the statute has no application in this case, we end however, with the reminder that trial courts should proceed with extreme caution in this area. The exclusion of any nondisruptive spectator from a criminal trial should never be undertaken without a full evaluation of the necessity for the exclusion and the alternatives that might be taken. This evaluation should be reflected in the record of the proceedings. The evaluation would fulfill the statutory requirements, if any, for exclusion of persons from a trial and assist in the evaluation of any alleged constitutional violation.

## SENTENCING ERRORS

### Waiver or Forfeiture of Blakely Error

Under California law, a defendant's failure to object in the trial court, even to errors of constitutional dimension, may lead to forfeiture of his or her claim of error on appeal. (See, e.g., *People v. Seaton* (2001) 26 Cal.4th 598, 634–637 [110 Cal.Rptr.2d 441, 28 P.3d 175] [selection of unbiased jury]; *People v. Barnum* (2003) 29 Cal.4th 1210, 1224–1225, fn. 2 [131 Cal.Rptr.2d 499, 64 P.3d 788] [5th Amend. privilege against self-incrimination]; *People v. Saunders* (1993) 5 Cal.4th 580, 590 [20 Cal.Rptr.2d 638, 853 P.2d 1093] [right to jury trial on truth of alleged prior convictions].)

Appellant argues that his Sixth Amendment right to a fair and impartial jury was violated by the trial court's imposition of the upper term on count 4 because the terms were based on facts not determined to be true by a jury. Respondent contends appellant waived any claim of *Blakely* or *Cunningham* error by failing to request a jury trial of the aggravating factors in the trial court. We disagree. Although we understand the well-established notion of waiver of a claim of error, we find there is no waiver or forfeiture of *Blakely* error in this case because a criminal defendant cannot have forfeited or waived a legal argument that was not recognized at the time of his trial. (*Blakely, supra,* 542 U.S at p. 310.)

### Imposition of the Upper Term

With regard to count 4, the jury found Mr. Esquibel not guilty of attempted murder, but guilty of the lesser included offense of assault with a firearm. The offense is punishable "by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding

one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment." (§ 245, subd. (a)(2).)

At sentencing, the trial court announced its decision to impose the upper term of four years in prison:

"So as to count 4, the conviction of assault with a firearm, the sentencing choices are two, three and four. That is two, three and four years. I find that the event involved great violence, that the victims were vulnerable, that the acts reflected a high degree of cruelty and callousness as aggravating factors.

"I found that the victim in this particular count did not suffer a physical injury to [be] a mitigating circumstances, and the defendant did not commit other violent crimes in the past to be mitigating circumstances.

"However, I find the aggravating circumstances outweigh the mitigating circumstances; therefore, it is appropriate to apply the high term of four years in state prison. And that will be the sentence."

Appellant contends the upper term on count 4 must be vacated and the middle term imposed, because the aggravating factors used to justify the upper term in each instance were not found true beyond a reasonable doubt by the jury as required under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], as construed in *Blakely*. Here, the trial court found three factors which rendered Esquibel eligible for the upper term: (1) the event involved great violence, (2) the victims were vulnerable, and, (3) the acts reflected a high degree of cruelty and callousness. These factors do not fall within the exceptions to *Blakely*.

Respondent contends that even if *Blakely* error occurred, the error was harmless because at "appellant's probation and sentencing hearing no evidence was presented that any of the trial court's findings as to the existence of the aggravating circumstances warranting imposition of the upper term of imprisonment were inaccurate. Appellant also makes no argument on appeal that any of the aggravating circumstances found by the trial court did not exist." Respondent also contends that the sentencing error was harmless because it is "beyond dispute that appellant's shooting at three-year old Victor M. involved great violence and reflected a high degree of cruelty and

callousness and that Victor was a vulnerable victim." Respondent argues that it "is clear beyond a reasonable doubt that the jury would have found the same aggravating circumstances that were found by the trial court if the issue had been presented to the jury."

We conclude that there was constitutional error here, but that it is harmless under the analysis set forth by the California Supreme Court in *People v. Sandoval* (2007) 41 Cal.4th 825 [62 Cal.Rptr.3d 588, 161 P.3d 1146]. Under *Sandoval*, "[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Id.* at p. 839.)

■ We agree with respondent that the sentencing error in this case was not prejudicial because a jury would have found, beyond a reasonable doubt, the same aggravating circumstances found by the trial court. "As used in the context of rule 4.421(a)(3), a 'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. . . .' [Citation.]" (*People v. Bloom* (1983) 142 Cal.App.3d 310, 321 [190 Cal.Rptr. 857].) "Callous" is typically defined as "insensitive; indifferent; unsympathetic" (Dictionary.com Unabridged <http://dictionary.reference.com/browse/callousness> [as of Aug. 29, 2008]), as in "*a callous indifference to the suffering of others*" (American Heritage Dict. of the English Language (4th ed. Nov. 30, 2007) <http://dictionary.reference.com/browse/callousness> [as of Aug. 29, 2008]). In this case, appellant opened fire in a public park on a group of unarmed parents with their small children. This was without debate a group of vulnerable people who were unguarded, unprotected and defenseless and it takes a high degree of callousness to engage in such an attack. Likewise, the high degree of violence is evident.

*Sentence Enhancements*

With regard to count 1, the trial court imposed both a 25-year-to-life enhancement based on the jury's finding that appellant personally discharged a firearm and a five-year enhancement based on the jury's findings that appellant personally inflicted great bodily injury on Ryan and caused him to suffer paralysis. Respondent concedes the sentencing error and upon resentencing the trial court is directed to delete the section 12022.7 enhancement to appellant's sentence in the new abstract of judgment.

## DISPOSITION

The trial court is ordered to delete the section 12022.7 enhancement and the superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment of the trial court is affirmed.

Rubin, J., and Flier, J., concurred.

On September 29, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 12, 2008, S167395.