Filed 4/1/15  P. v. Miller CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073290 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F05320) |
| v. | |
| CHRISTOPHER JAMES MILLER, | |
| Defendant and Appellant. | |

Defendant and two others committed a strong-arm robbery of a passenger on a Sacramento light rail train.  A jury found defendant Christopher James Miller guilty of second degree robbery (Pen. Code, § 211)[1] and receiving stolen property (§ 496, subd. (a)).  The trial court found true allegations that defendant had a prior serious felony conviction (§ 667, subd. (a)), a strike conviction (§§ 667, subds. (b)-(i), 1170.12), and had served a prior prison term (§ 667.5, subd. (b)).

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant was sentenced to prison for 16 years consisting of 10 years (double the upper term) for the robbery, five years for the prior serious felony conviction, and one year for a prior prison term. The court orally imposed a sentence of one-third the midterm for receiving stolen property and stayed that sentence pursuant to section 654.

On appeal, defendant contends the trial court misunderstood the scope of its discretion, or abused its discretion, when it selected the upper term of imprisonment for robbery. We disagree.

We obtained supplemental briefing addressing whether the receiving stolen property conviction must be reversed because the robbery conviction involved the theft of the same stolen property. The parties concur that the receiving conviction must be reversed, and we agree.

The receiving stolen property conviction is reversed. In all other respects, the judgment is affirmed.

## FACTUAL BACKGROUND

On August 4, 2012, 24-year-old McKinley Hampton purchased two video movies, a video game player that had distinctive markings, and a charger. Carrying the items in a black plastic bag, he boarded a light rail train in downtown Sacramento. He sat near a window where he listened to music and used the game player.

On the train with Hampton were three men later identified as defendant, Reggie Jackson, and Richard Adam Davenport. Defendant and Jackson approached Hampton and each of them hit Hampton on the head.

One of the men demanded that Hampton hand over his bag, stating "give me your stuff" and "don't make me pull out my gun." Defendant took Hampton's black plastic bag and game player. Hampton saw one assailant leave the train.

Another light rail passenger helped Hampton call the police to report the robbery. Based on descriptions they had received, the police found defendant and Jackson at a light rail station later that afternoon. Defendant still had possession of Hampton's black

bag containing headphones and videos.  Defendant had sold Hampton's game player at a flea market for $20, but the player was recovered.

While transporting defendant to the police station, Sacramento Police Officer Ethan Hanson asked him whether he had known the videos in the black bag had been stolen.  Defendant nodded affirmatively.  Surveillance video from the light rail station and train showed defendant, Jackson, and Davenport entering the train and the three subjects leaving the train.

## DISCUSSION

### I.  Imposition of the Upper Term

Defendant contends the case should be remanded for resentencing because the trial court misunderstood the scope of its discretion or abused its discretion in imposing the upper term for robbery.  The People assert that defendant forfeited the point by failing to raise it in the trial court, and the court properly understood and exercised its discretion. We conclude the claim was forfeited and any error was not prejudicial.

### A.  Background

Defendant has a criminal history dating back to 1996.  In 1996, he was adjudicated a ward of the court when as a 15 year old he admitted to having sexual intercourse with an eight-year-old female victim on three occasions and with a nine-year-old female victim on one occasion.  Among his seven adult misdemeanor convictions are a 1999 conviction for a violation of section 12020, subdivision (a), manufacture/sale/possession of a deadly weapon, a 2005 Washington state conviction for attempted battery causing substantial bodily harm, and a 2006 conviction for a violation of Vehicle Code section 10851, taking or driving a vehicle without consent.  Defendant also had a 2001 Washington state felony conviction for sale of cocaine.  A 2006 robbery conviction was charged as a strike under sections 667, subdivisions (b) through (i), and 1170.12, and as a serious felony under section 667, subdivision (a).  A 2010 forgery conviction served as the basis for a prior prison term allegation under section 667.5, subdivision (b).

3

The probation report listed seven factors in aggravation: the crime involved acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1))[2]; the victim was particularly vulnerable (rule 4.421(a)(3)); the manner in which the crime was committed indicates planning, sophistication, or professionalism (rule 4.421(a)(8)); defendant has engaged in violent conduct (rule 4.421(b)(1)); defendant's prior convictions and sustained petitions are numerous or increasingly serious (rule 4.421(b)(2)); defendant served a prior prison term (rule 4.421(b)(3)); and defendant was on parole at the time of the offense (rule 4.421(b)(4)). The report identified no circumstances in mitigation.

The probation report recommended that defendant be committed to prison for 12 years, consisting of six years (double the middle term) for robbery, five years for the prior serious felony, and one year for a prior prison term.

At sentencing, defendant's trial counsel argued that no perpetrator used a weapon and that defendant was not the one who punched the victim. Counsel argued that defendant was an accomplice to the robbery and the perpetrator of the receiving stolen property. Counsel asked the court to follow the probation department's recommendation. "Probation merely chose the midterm, and I think based on all of those factors is why probation did choose the midterm."

In sentencing defendant, the trial court said, "Well, I'm always amazed when I receive a probation report and where there are listed a number of factors in aggravation and absolutely no circumstances in mitigation, and yet the probation officer concludes that the middle term is appropriate. [¶] *The law, in fact, is that when the aggravating circumstances outweigh the mitigating circumstances that the penalty should be aggravated. You go into a sentencing assuming middle term* unless there are mitigating

---

[2] Undesignated rule references are to the California Rules of Court.

4

circumstances or aggravating circumstances. In this case, again, I will indicate there are only circumstances in aggravation." (Italics added.)

The trial court then identified several circumstances in aggravation. "[Defendant] was on parole. In addition, [defendant] has been convicted of numerous offenses, some adjudications as a juvenile that are not being alleged as prior convictions and upon which I do consider in reaching my decision." Referring to the nature of the victim, the court said, "[H]e was confronted with three adult males that were significantly larger than himself. So to the extent that he was vulnerable, one can at least indicate that he was vulnerable in his size. He had absolutely no ability to defend against three larger men that decided to take his property." The court further noted, "It appeared from the Court's perspective in watching the video numerous times, that all three Defendants were taunting and were laughing about what had just occurred to Mr. Hampton. [¶] And then, of course, the Court got to observe Mr. Hampton as he testified, and I think the record should reflect that Mr. Hampton appears to be a very docile, naive, childlike young man who it would not take three adults to take something from him. Any one of the Defendants in this case could have easily taken Mr. Hampton's property without hitting him or abusing him or humiliating him and making him to feel like he had no recourse. So I do find the victim in this case to have been particularly vulnerable."

The court continued, "So, again, *not seeing anything in mitigation* and only seeing what is [*sic*] aggravating factors, and I want the record to be clear that I'm not using any of the prior convictions that I've alluded to that will increase the Defendant's term, because that would be a violation of the dual use of facts. [¶] Rather I'm relying upon those adjudications and convictions that were not plead as prior convictions in this case, in finding that the Defendant has engaged in other prior convictions and in juvenile delinquency proceedings that are serious and are numerous."

The court selected the upper term of five years and doubled it due to the prior strike. As to count two, receiving stolen property, the trial court imposed a consecutive

term of one-third the midterm, stating it was doing so "because this was a continuous course of criminal conduct, and the Defendant did harbor a single criminal objective." Defendant's trial counsel did not object or otherwise respond to these remarks.

### B. Analysis

In *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856] (*Cunningham*), the United States Supreme Court concluded that the sentencing scheme under former section 1170 violated the Sixth Amendment right to jury trial. Former section 1170 provided for a determinate sentencing scheme comprised of lower, middle and upper terms, and stated, as pertinent, that "the court shall order imposition of the middle term, unless there are circumstances [the judge finds] in aggravation or mitigation of the crime." (Former § 1170, subd. (b); *Cunningham*, *supra*, 549 U.S. at p. 277 [166 L.Ed.2d at p. 866].) Based on this quoted language from former section 1170, *Cunningham* deemed the middle term the legally pivotal "statutory maximum" term, and noted that "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum [i.e., an upper term] based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant [i.e., a fact found by the judge]." (*Cunningham*, *supra*, 549 U.S. at p. 274, see *id.* at pp. 275, 293 [166 L.Ed.2d at p. 864, see *id.* at pp. 865, 876].)

Senate Bill No. 40 (Stats. 2007, ch. 3, § 3) amended section 1170 in response to *Cunningham*'s suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. (*Cunningham*, *supra*, 549 U.S. at pp. 293-294 [166 L.Ed.2d at pp. 876-877].)

Effective March 30, 2007, Senate Bill No. 40 was enacted to amend section 1170 so that: (1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose

6

an upper, middle or lower term based on reasons he or she states. (Stats. 2007, ch. 3, § 3.) As amended, section 1170 now provides in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . . ." (§ 1170, subd. (b).) Consistent with the 2007 amendment to section 1170, subdivision (b), rule 4.420 was also amended that same year to provide in pertinent part, "(b) In exercising his or her discretion in selecting one of the three authorized prison terms referred to in section 1170(b), the sentencing judge *may* consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Italics added.)

Thus, the trial court's comments that "[t]he law, in fact, is that when the aggravating circumstances outweigh the mitigating circumstances that the penalty should be aggravated" and "you go into sentencing assuming middle term" were inconsistent with Senate Bill No. 40, which had repealed the presumptive middle term and the fact-bound weighing process to which the court evidently was referring. Under Senate Bill No. 40, the sentencing court must exercise sound judicial discretion, but it is not constrained by the former factual considerations. The operative version of section 1170, subdivision (b), does *not* require that the penalty should be aggravated when aggravation outweighs mitigation.

Defendant has forfeited any objection to the trial court's statement by failing to object to it at sentencing. (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Smith* (2001) 24 Cal.4th 849, 852.)

In any event, it is not reasonably probable that a different sentence would result on remand. (*People v. Davis* (1995) 10 Cal.4th 463, 552 (*Davis*).) The trial court chose the upper term because of three aggravating factors: (1) defendant was on parole at the time

7

the crime was committed; (2) defendant's numerous prior juvenile adjudications and adult convictions that were not plead as enhancements; and (3) the victim was particularly vulnerable. A single aggravating factor will support an upper-term sentence (*People v. Black* (2007) 41 Cal.4th 799, 813 (*Black*); *People v. Weber* (2013) 217 Cal.App.4th 1041, 1064), and any one of these does so here.

Defendant claims the court's use of defendant's criminal history not pled as enhancements "[comes] close to" violating the dual use prohibition, and does violate the prohibition's "spirit," because the pleaded and unpleaded priors all reflect his "recidivism." But "[a]s noted in *Scott*, the prohibition against dual use of facts in sentencing is a limited one: 'Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited *to some extent*.' [Citation.]" (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197, citing *People v. Scott*, *supra*, 9 Cal.4th at p. 350.) Defendant's argument disregards the limited nature of the prohibition. There was nothing wrong with the court considering the fact that defendant was on parole when he robbed the victim and his prior criminal history that was not pled as enhancements. (See *Black*, *supra*, 41 Cal.4th at p. 818.)

In an apparent attempt to identify mitigation, defendant argues his crime was "relatively unsophisticated and minimal, as robberies go. Three street toughs seized the opportunity to snatch property away from a single young man who appeared to be, and was, not the type to offer much resistance." Thus, in defendant's view, the "only truly aggravating factor was [his] prior criminality." Defendant's argument obscures the trial court's finding that the victim was "confronted with three adult males that were significantly larger than himself," thus making the victim "vulnerable in his size."

The record supports the trial court's finding that the victim was particularly vulnerable because defendant acted in concert with two others, all of whom were larger than the victim (rule 4.421(a)(3); see *People v. Esquibel* (2008) 166 Cal.App.4th 539, 558 [" 'a "particularly vulnerable" victim is one who is vulnerable "in a special or unusual

8

degree, to an extent greater than in other cases.  Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. . . ."  [Citation.]' "]).  The court's other observations about defendant and his coperpetrators taunting the victim and acting in concert with one another when one person could have easily taken the victim's belongings without abusing and humiliating the victim are findings "reasonably related to the decision being made," and are additional aggravating factors.  (Rule 4.408(a); *Black*, *supra*, 41 Cal.4th at p. 817 ["An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.' "].)  Accordingly, we reject defendant's contention that his prior criminality was the "only" truly aggravating factor.

Defendant contends that the trial court "made reference to the mitigating circumstance of [defendant's] behavior throughout the court proceedings."  The trial court did observe, "[Defendant] has been respectful to this Court.  He has done nothing in my presence or in the jury's presence that would indicate anything other than respect for the court, and I do appreciate that, and I think that is . . . a good thing about, [defendant]."

It is not necessary to consider at length whether a defendant's display of good behavior in court at his criminal trial -- a place and time when good behavior is squarely in his or her self-interest -- can ever be a mitigating factor within the meaning of rule 4.408(a).  Here, there is no reasonable probability that defendant's courtroom behavior would have motivated the court to exercise its discretion to impose something other than the upper term, given the aggravating factors the trial court identified.  (*Davis*, *supra*, 10 Cal.4th at p. 552.)

## II.  Conviction of Receiving Stolen Property

On its own motion, this court solicited and obtained supplemental letter briefs on the question of whether section 496, subdivision (a)'s provision that "no person may be convicted both pursuant to this section and of the theft of the same property" requires reversal of defendant's receiving stolen property conviction in light of:  (1) his conviction

9

on the robbery count; (2) the prosecutor's comment in summation that defendant "knew the property had been stolen. Of course he knew it was stolen. He stole it"; and (3) the trial court's finding that defendant's conduct "was a continuous course of criminal conduct, and the Defendant did harbor a single criminal objective."

In their supplemental briefs, the parties agree that the dual convictions are improper and that the proper remedy is to reverse the receiving conviction while allowing the robbery conviction to stand. (*People v. Ceja* (2010) 49 Cal.4th 1, 9-10.) We agree with the parties and so order.

## DISPOSITION

Defendant's conviction on count two is reversed and the trial court is directed to enter dismissal of that count. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.


     MURRAY     , J.


We concur:


     BLEASE     , Acting P. J.


     BUTZ     , J.

10