Filed 3/25/24  P. v. Pollard CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>JEFFERY J. POLLARD,<br><br>       Defendant and Appellant. | C098136<br><br>(Super. Ct. No. 62-184425) |

A jury found defendant Jeffery J. Pollard guilty of furnishing a controlled substance and unlawfully depositing human remains after the victim overdosed on drugs defendant provided and defendant left his body in a parking lot.  The jury also found true the aggravating circumstance that the crime involved great violence, bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness.  On appeal, defendant claims the trial court erred when it instructed the jury as to the aggravating circumstances, both because it did not accurately state the requirements for the

1

aggravating circumstance and because there was no unanimity instruction. We find no error and will affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

The prosecution charged defendant with furnishing a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and misdemeanor unlawful disposal of human remains (Health & Saf. Code, § 7054, subd. (a)(1)). The prosecution alleged circumstances in aggravation for the furnishing a controlled substance count, including the crime "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; the victim was particularly vulnerable; defendant induced others to participate in the commission of the crime; the crime involved a large quantity of contraband; and the controlled substances were furnished to a person in psychological treatment. (Cal. Rules of Court, rule 4.421(a), (c); rule citations that follow are to the California Rules of Court.) The prosecution later withdrew the allegations as to the quantity of the contraband and the victim's psychological treatment.

At trial, police testified they found the victim lying on the ground in a parking lot with takeout food containers beside him. The victim was not breathing. A forensic pathologist testified the victim died after taking fentanyl combined with alcohol. The victim died shortly after ingesting the fentanyl.

Police reviewed surveillance videos from the surrounding area, which showed defendant leaving the parking lot in a Toyota Corolla shortly before the police received a 911 call reporting the victim. Police tracked the course the victim took with defendant in the Corolla that morning, which showed defendant picking up the victim, going to various locations, and stopping in the parking lot.

Police also reviewed text messages between defendant and the victim. The victim had previously texted defendant asking for a "turkey," which a detective understood to be

2

a reference to drugs. In the days before the victim died, he asked defendant to "bring one over," a reference to a Percocet pill, and later told defendant, "I'll give you money when I get it." Shortly after defendant's Corolla left the spot near the victim's body, defendant texted the victim "Thanks again for the food, bro."

Police interviewed defendant multiple times; recordings of those interviews were played for the jury at trial. Two days after the victim died, a detective interviewed defendant for the first time. Defendant said he gave the victim a ride to the bank and got food, but the victim was "acting a little weird" so defendant left around lunchtime. Defendant and the victim smoked some weed and the victim was getting tired, so defendant left him sitting on a curb in the parking lot. They did not use any drugs, aside from weed. Defendant did not have any reason to believe there was something wrong with the victim.

Five months later, defendant spoke with the detective again. Defendant denied selling the victim anything aside from weed. He admitted he spent almost three hours with the victim before the victim died and that the surveillance videos at the time showed defendant walking around to the passenger side of his car, where the victim was lying on the ground, get back in his car, and then drive away without the victim.

Approximately six months later, defendant called the detective, saying he wanted to "come clean." He told the detective the texts between he and the victim were about pills the victim wanted to buy from defendant. He said he and the victim would "do some pills" and drink beer. Historically, they used Percocet, which were green pills with an "M" on them. The day the victim died, defendant only had light blue pills, which he had noticed made him "feel cold, sweaty." The light blue pills were new, although defendant had seen the victim use them before.

The victim asked defendant for a pill, they got some beer, and the victim took one pill; the two of them then drank beer and smoked weed in the parking lot. The victim paid defendant $20 for the pill. At one point, defendant realized the victim was not

3

responding and "got really scared" because the victim "looked like he was dead." The victim's hands were cold, and his eyes were rolled back in his head. Defendant put the victim on the ground, left, and flushed the rest of the pills down the toilet. He did not attempt to assist the victim and thought about calling 911 but was too scared. He acknowledged he was not high at the time.

The parties discussed how the trial court would instruct the jury on the aggravating circumstances. As to the factor alleging great bodily injury or acts with a high degree of cruelty, viciousness, or callousness, defendant argued the instruction did not apply because defendant went to the police and admitted his participation in the crime. The trial court acknowledged defendant's factual argument but rejected the challenge, saying the jury could determine whether the circumstance had been proven beyond a reasonable doubt.

Ultimately, the trial court used an instruction reading, as relevant, "To prove the allegation of circumstances in aggravation, the People must prove that: [¶] (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness (Rule of Court 4.421(a)(1)) [¶] . . . [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

In closing arguments, the prosecution argued defendant's conduct qualified for the aggravating factor, saying, "this involved great bodily harm and a high degree of cruelty, viciousness, and callousness. I put these in all caps because it's really [] not an 'or' situation. He did all of these. [¶] Great bodily harm. He gave [the victim] the pill that took his life. There is no higher level of great bodily harm. That's it. Cruelty and viciousness and callousness, dumped his body. He didn't call 9-1-1. He didn't try to help. That's callous, that's vicious, that's cruel. He dumped him in the parking lot with a bag of trash. That's cruel."

4

The jury found defendant guilty of both counts and found true the aggravating factor that the "crime involved great[] violence, great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness." The trial court sentenced defendant to the upper term of five years on the furnishing a controlled substance count, noting the jury's finding as to the aggravating factor. The trial court also imposed a concurrent six-month sentence for the disposal of human remains count.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Jury Instruction Completeness*

Defendant argues the instruction as to the aggravating factors was incomplete because it did not explicitly state that defendant's conduct must have "involved additional, aggravating conduct, e.g., conduct *beyond* that required to complete the offense." Defendant also raises specific issues about each term within the aggravating factor, including "great bodily harm," "the threat of great bodily harm," "great violence," and "cruelty, viciousness, or callousness."

The People assert defendant forfeited this issue because trial counsel did not object to the jury instruction. Even assuming the issue was not forfeited, however, we find no merit in defendant's claims.

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We must review the wording of the jury instruction and assess whether it accurately states the law. (*Ibid.*) We must consider whether a reasonable likelihood exists that the challenged instruction "caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'

5

[Citation.]" (*Ibid.*) "There is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial. As long as the trial court has correctly instructed the jury on all matters pertinent to the case, there is no error." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277.)

The aggravating factor at issue lists several factors in the disjunctive, making "clear that the rule may be satisfied by cruel, vicious or callous acts other than those involving great violence, great bodily harm, or threat of great bodily harm." (*People v. Duran* (1982) 130 Cal.App.3d 987, 990 [applying rule 421(a)(1), the predecessor to rule 4.421(a)(1)]; see also *People v. Nevill* (1985) 167 Cal.App.3d 198, 201.) As the recently created CALCRIM No. 3224, which did not exist at the time of defendant's trial, notes, a fact in aggravation must make "the offense distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) " 'Callous' is typically defined as 'insensitive; indifferent; unsympathetic' [citation], as in '*a callous indifference to the suffering of others*' [citation]." (*People v. Esquibel* (2008) 166 Cal.App.4th 539, 558.)

The trial court instructed the jury that, to find defendant guilty of furnishing a controlled substance, the prosecution was required to prove: 1) defendant furnished a controlled substance; 2) defendant knew of its presence; 3) defendant knew of the substance's nature or character as a controlled substance; 4) the controlled substance was Percocet and/or fentanyl; and 5) the controlled substance was a usable amount. (See CALCRIM No. 2300.) The trial court then instructed the jury on the aggravating factors, saying the prosecution was required to prove, beyond a reasonable doubt, that the crime involved a "high degree of cruelty, viciousness or callousness." Both statements are accurate as a matter of law. And, because the aggravating circumstance requirements did not overlap with the elements of the crime, the instructions together make clear the jury had to find additional facts, beyond the basic elements of the offense, to find the aggravating factor true. While an express statement that the aggravating facts must make

6

the offense distinctively worse than ordinary is a correct statement of law, it is unlikely the jury misapplied the instructions because the trial court omitted such a statement.

Defendant argues the trial court should have defined the term "cruelty" and that defendant's conduct was not cruel, vicious, or callous. As an initial matter, the term "cruelty" in this context does not have a legal meaning that departs significantly from common usage, and the jury was instructed in CALCRIM No. 200 that any undefined terms were "to be applied using their ordinary, everyday meanings." Similarly, we note the newly created CALCRIM No. 3224 only includes a definition of "cruelty" as an optional instruction, and even then, defines it simply as an act demonstrating "the deliberate infliction of physical or mental suffering."

To the extent defendant is arguing the evidence was insufficient to find defendant's behavior cruel, vicious, or callous, we also disagree. Defendant knew he should call 911 when he found the victim nonresponsive but did not do so. Instead, he left the victim's body on the ground in a parking lot and drove away. He then texted the victim in an apparent attempt to cover his tracks and disposed of the pills that tied him to the death. He also lied to police in two separate interviews several months apart, saying he did not have any reason to think something was wrong with the victim when they parted. Defendant's attempts at self-preservation are sufficient to demonstrate he acted in an insensitive or indifferent manner towards the victim's suffering. In a similar vein, we reject defendant's arguments as to the "great bodily harm" and "great violence" prongs of the aggravating factor; as noted above, neither of those are necessary to aggravate a crime based on the cruelty, viciousness, or callousness in the offense.

II

*Unanimity*

Defendant argues the trial court erred because it did not give an unanimity instruction as to the aggravating factors under rule 4.421(a)(1). In other words, defendant

claims the jury should have been required to unanimously agree on which of the factors --

great violence, threat of great violence, great bodily harm, or other acts disclosing a high

degree of cruelty, viciousness, or callousness -- formed the basis of the true finding. We

disagree.

"In a criminal case, 'the jury must agree unanimously the defendant is guilty of a

*specific* crime. [Citation.] Therefore, cases have long held that when the evidence

suggests more than one discrete crime, either the prosecution must elect among the

crimes or the court must require the jury to agree on the same criminal act.' [Citation.]

Yet 'where the evidence shows only a single discrete crime but leaves room for

disagreement as to exactly how that crime was committed or what the defendant's precise

role was, the jury need not unanimously agree on the basis or, as the cases often put it,

the "theory" whereby the defendant is guilty.' " (*People v. Covarrubias* (2016) 1 Cal.5th

838, 877-878.)

As the parties note, our Supreme Court has concluded there is no constitutional or

statutory unanimity requirement for a "jury's determination of factually disputed

aggravating circumstances." (*People v. McDaniel* (2021) 12 Cal.5th 97, 143, 148.)

Defendant argues, however, that this conclusion is no longer valid following the passage

of Senate Bill No. 567 (2021-2022 Reg. Sess.), which became effective after *McDaniel*.

(Stats. 2021, ch. 731, § 1.3.)

Defendant's reasoning does not make sense; although the amended law requires,

among other things, aggravating circumstances to be found true beyond a reasonable

doubt, it does not introduce an unanimity requirement. There has been no change to the

phrasing of rule 4.421(a)(1) such that unanimity is now implied where it was not before.

The bench notes to CALCRIM No. 3224 also support our conclusion there is no

unanimity requirement. Although the jury instruction was adopted after the passage of

Senate Bill No. 567, the bench notes cite *McDaniel* and explain unanimity is not required

for facts underlying the aggravating factor. Jury instruction bench notes are not binding

authority (*People v. McDonald* (2015) 238 Cal.App.4th 16, 26), but we see no reason to conclude *McDaniel* is no longer good law.  We thus reject defendant's argument.

DISPOSITION

The judgment is affirmed.

 

 

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

RENNER, J.