Filed 1/8/26  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099805 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE009695) |
| v. | |
| MARCUS LUTHER TAYLOR, | |
| Defendant and Appellant. | |

Defendant Marcus Luther Taylor contends the trial court prejudicially erred when it sentenced him to an upper term sentence without affording him a jury trial on aggravating factors.  We agree and will remand this matter for resentencing.

FACTS AND HISTORY OF THE PROCEEDINGS

Early on June 12, 2022, California Highway Patrol officers observed defendant driving a car with its taillights off.  Defendant made an unlawful U-turn and nearly hit a car, forcing the car's driver to swerve onto the sidewalk.  The officers stopped defendant who admitted to drinking.

1

A Sacramento police officer assumed the investigation and administered field-sobriety tests. The tests confirmed defendant had been driving under the influence of alcohol. Two preliminary alcohol screening tests recorded defendant's blood-alcohol level at 0.21 percent and 0.198 percent.

Arrested and transported to the county jail, defendant submitted to a blood chemical test. A forensic analysis of the sample revealed that defendant's blood-alcohol level was 0.218 percent. A county criminalist testified that, based on principles of back extrapolation, defendant's blood-alcohol concentration may have been as high as 0.26 percent when he made the unlawful U-turn.

On the first day of trial, defendant pleaded no contest to driving with a suspended or revoked driver's license, a misdemeanor (count three), and driving a vehicle not equipped with a functioning ignition interlock device, also a misdemeanor (count four). (Veh. Code, §§ 14601.2, subd. (a); 23247, subd. (e).) A jury subsequently found defendant guilty of felony driving under the influence of alcohol (DUI) (count one) and felony driving with a blood-alcohol concentration of 0.08 percent or more (count two). (Veh. Code, § 23152, subds. (a), (b).)

Defendant admitted a prior strike conviction for first degree burglary, and through his counsel he stipulated he had two prior DUI convictions for offenses committed in 2012. (Pen. Code, §§ 459; 667, subds. (b)-(i); 1170.12; Veh. Code, § 23152, subd. (a).) Additionally, following a bench trial, the trial court found that defendant had another prior DUI conviction in 2019 where he caused great bodily injury. (Veh. Code, § 23153, subd. (b).)

The trial court also found true a number of aggravating circumstances. Each factor was pleaded in the information. The court found true that defendant's convictions as an adult "are numerous and of increasing seriousness"; he served a prior prison term, he was on post release community supervision at the time of the offense; and his prior

performance on post release community supervision was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(2), (3), (4), (5).)

At sentencing, the trial court stated the aggravating factors somewhat differently. It set forth the following factors in support of an upper term sentence: defendant's prior convictions as an adult "are sustained, and the Court finds that to be true"; defendant served a prior prison sentence, he was on probation or mandatory supervision; his prior performance on probation has been unsatisfactory; and his blood-alcohol content was 0.21 percent.

The trial court sentenced defendant to a prison term of six years (double the upper term) on count one. It stayed a six-year term (double the upper term) on count two pursuant to Penal Code section 654. The court sentenced defendant to time served on counts three and four.

## Discussion

A criminal defendant has a constitutional and statutory right to have a jury determine beyond a reasonable doubt the truthfulness of every aggravating circumstance used to increase the penalty for the crime. (*Cunningham v. California* (2007) 549 U.S. 270, 288-289; *People v. Lynch* (2024) 16 Cal.5th 730, 757; Pen. Code, § 1170, subd. (b).) "[A]ny fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1084 (*Wiley*); *Erlinger v. United States* (2024) 602 U.S. 821, 838-840, 842.) Any waiver of this jury trial right must be an express waiver by the defendant and counsel in open court. (*People v. French* (2008) 43 Cal.4th 36, 47; Cal. Const., art. I, § 16.)

The trial court did not obtain defendant's personal waiver of his right to a jury trial on the aggravating factors. Defendant's trial counsel stipulated to a court trial on defendant's behalf, but defendant did not personally stipulate to a court trial or waive the

3

jury trial right. The court found the pleaded aggravating circumstances to be true after a court trial, in violation of defendant's constitutional right to a jury.

The error is prejudicial unless we "can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*People v. Lynch, supra*, 16 Cal.5th at p. 768; *Chapman v. California* (1967) 386 U.S. 18, 24.) Lack of a jury trial is not harmless if " 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley, supra*, 17 Cal.5th at p. 1087, quoting *Neder v. United States* (1999) 527 U.S. 1, 19.)

The trial court relied upon at least one aggravating factor to impose defendant's upper term sentence which we cannot conclude beyond a reasonable doubt the jury would have found true: whether defendant's prior performance on post release community supervision was unsatisfactory. There is no dispute that defendant committed the present offense while he was on post release community supervision. However, his probation officer testified that until defendant was arrested, defendant was compliant. The officer visited defendant at his apartment three times and each time the apartment was in satisfactory condition. Defendant was compliant and cooperative with the officer's efforts to monitor him. The officer stated that defendant was a satisfactory individual under parole up until his arrest.

The California Supreme Court faced a similar issue in *Wiley*. There, the high court rejected the Attorney General's argument, one the Attorney General similarly implies here, that no rational jury could conclude that a defendant who had committed crimes two out of the three times he had been on formal probation performed satisfactorily on probation. (*Wiley, supra*, 17 Cal.5th at p. 1091.) The probation report in that case disclosed that the defendant had, while on probation for one prior case, successfully completed a residential drug treatment program, obtained his driver's license, paid all

4

court ordered fines and fees, and committed no probation violations. (*Id*. at p. 1090.) In two other cases, the defendant violated probation due to his arrest and conviction of new offenses. Probation was revoked and a prison term ensued. After his release from prison on post release community supervision, the defendant was convicted of a new misdemeanor offense but was fairly compliant for the remainder of his supervision term. (*Id*. at pp. 1090-1091.) The probation officer characterized the defendant's performance on probation as both an aggravating factor and a mitigating factor. (*Id*. at p. 1091.)

On this record, the Supreme Court could not "discount the possibility that either counsel in a contested jury trial might have presented live testimony on this factor that would have affected the jury's determination." (*Wiley, supra*, 17 Cal.5th at p. 1091.) Nor could the court "discount the possibility that a rational jury could have disagreed as to whether the People had proved that Wiley's *overall performance* on probation was unsatisfactory." (*Ibid*.)

So it is here. Defendant's only violations of post release community supervision were the offenses before us. Otherwise, his performance on supervision was satisfactory. Under these circumstances, we, too, cannot ignore the possibility that at a contested jury trial, either counsel may have presented evidence regarding defendant's performance on post release community supervision that would have affected the jury's determination.

In addition, defendant's RAP sheet, which was admitted into evidence at the court trial, disclosed he had been sentenced to probation for offenses committed in 1997, 1998, 2007, 2010, and 2011. As *Wiley* implies that these probation periods are also relevant, there is no evidence in the record from which we could determine beyond a reasonable doubt how a jury would decide whether defendant's "overall performance" was satisfactory during his past probation periods as well as during his most recent post release community supervision. (*Wiley, supra*, 17 Cal.5th at p. 1091.)

The trial court's finding without a jury that defendant's performance on probation was unsatisfactory was thus prejudicial. Because defendant was entitled to a jury trial at

a minimum on this aggravating factor, we must remand the matter for a full resentencing to afford defendant that right. Because we reverse on this ground and remand for a full resentencing, we need not address defendant's remaining arguments.

## DISPOSITION

The judgment is reversed and the matter remanded solely for a full resentencing. In all other respects, the judgment is affirmed.

_____/s/_____
HULL, J.

We concur:


_____/s/_____
EARL, P. J.


_____/s/_____
MAURO, J.